**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| AMIR LAVI,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Civil Action No. 1:26-cv-00949 |

# DEFENDANT GOOGLE LLC'S MOTION TO DISMISS

## TABLE OF CONTENTS


**Page**

I. INTRODUCTION ........................................ 1

II. STATEMENT OF FACTS ........................................ 2

A. The asserted patent and asserted claim ........................................ 2

B. The allegations against Google. ........................................ 4

III. ARGUMENT ........................................ 5

A. The Complaint fails to plausibly allege direct infringement. ........................................ 5

1. Legal standard ........................................ 5

2. The Complaint fails to adequately allege that Google practices any element of the asserted claim. ........................................ 5

3. The Complaint admits a lack of direct infringement because it alleges “users’” “personal” devices—rather than Google—satisfy claim element 1.a. ........................................ 6

B. The Complaint does not plausibly allege indirect infringement. ........................................ 8

C. The Complaint does not plausibly allege willful infringement. ........................................ 9

D. The asserted claim is invalid under 35 U.S.C. § 101. ........................................ 9

1. Legal standard ........................................ 10

2. *Alice* step one: the asserted claim is directed to the abstract idea of providing related terms in an interactive GUI that allows the user to modify her search query ........................................ 10

3. *Alice* step two: the asserted claim lacks an inventive concept. ........................................ 16

E. Leave to amend should be denied. ........................................ 19

IV. CONCLUSION ........................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
882 F.3d 1121 (Fed. Cir. 2018) ....................10

*AK Meeting IP LLC v. Zoho Corp.*,
No. 1:22-CV-1165-LY, 2023 WL 1787303 (W.D. Tex. Feb. 6, 2023)....................6

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014)....................10, 16

*Angel Techs. Grp., LLC v. Meta Platforms, Inc.*,
No. 2022-2100, 2024 WL 4212196 (Fed. Cir. Sept. 17, 2024) ....................14

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
377 U.S. 476 (1964)....................8

*Ballard v. Devon Energy Prod. Co.*,
678 F.3d 360 (5th Cir. 2012) ....................19

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*,
687 F.3d 1266 (Fed. Cir. 2012) ....................16

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) ....................5, 6

*Brightedge Techs., Inc. v. Searchmetrics, GmbH*,
304 F. Supp. 3d 859 (N.D. Cal. 2018)....................18

*Broadcom Corp. v. Netflix Inc.*,
677 F. Supp. 3d 1010 (N.D. Cal. 2023)....................18

*BSG Tech LLC v. Buyseasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018) ....................19

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
631 F.3d 1279 (Fed. Cir. 2011) ....................7

*Chewy, Inc. v. Int'l Bus. Machs. Corp.*,
94 F.4th 1354 (Fed. Cir. 2024) ....................19

*Collarity, Inc. v. Google Inc.*,
No. 11-1103-MPT, 2015 WL 7597413 (D. Del. Nov. 25, 2015) ....................12, 13

*Commil USA, LLC v. Cisco Sys., Inc.*,
575 U.S. 632 (2015)..........8

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014)..........13, 18

*CTD Networks, LLC v. Google, LLC*,
688 F. Supp. 3d 490 (W.D. Tex. 2023)..........7, 9

*Customedia Techs., LLC v. Dish Network Corp.*,
951 F.3d 1359 (Fed. Cir. 2020)..........14

*De La Vega v. Microsoft Corp.*,
No. W-19-CV-00612-ADA, 2020 WL 3528411 (W.D. Tex. Feb. 11, 2020)..........6, 7

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016)..........10

*Etto IP, LLC v. Reebok Int'l Ltd.*,
No. 6:23-CV-00003, 2023 WL 11983055 (W.D. Tex. July 17, 2023)..........5, 6, 8

*Hyper Search, LLC v. Facebook, Inc.*,
No. 17-1387-CFC-SRF, 2018 WL 6617143 (D. Del. Dec. 17, 2018)..........17

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
681 F.3d 1323 (Fed. Cir. 2012)..........9

*In re TLI Commc'ns LLC Pat. Litig.*,
823 F.3d 607 (Fed. Cir. 2016)..........17, 19

*Interval Licensing LLC v. AOL, Inc.*,
896 F.3d 1335 (Fed. Cir. 2018)..........13

*Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.* (*IBM I*),
50 F.4th 1371 (Fed. Cir. 2022)..........12, 13, 15

*Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.* (*IBM II*)
No. 2022-1861, 2024 WL 89642 (Fed. Cir. Jan 9, 2024)..........15

*Landmark Tech., LLC v. Assurant, Inc.*,
No. 6:15-CV-76-RWS-JDL, 2015 WL 4388311 (E.D. Tex. July 14, 2015)..........13

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
869 F.3d 1372 (Fed. Cir. 2017)..........8

*LookSmart Grp., Inc. v. Google, LLC*,
No. 24-cv-07147-JST, 2025 WL 1785343 (N.D. Cal. June 26, 2025)..........13

*Lyda v. CBS Corp.*,
838 F.3d 1331 (Fed. Cir. 2016) ....................7

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*,
811 F.3d 1314 (Fed. Cir. 2016) ....................13, 18

*Mullen Indus. LLC v. Meta Platforms, Inc.*,
No. 1:24-cv-354-DAE, 2025 WL 326402 (W.D. Tex. Jan. 29, 2025) ....................6

*Network Architecture Innovations LLC v. CC Network Inc.*,
No. 2:16-CV-00914-JRG, 2017 WL 1398276 (E.D. Tex. Apr. 18, 2017) ....................19

*PerformancePartners, LLC v. FlashParking, Inc.*,
697 F. Supp. 3d 678 (W.D. Tex. 2023) ....................10

*RingCentral, Inc. v. Dialpad, Inc.*,
372 F. Supp. 3d 988 (N.D. Cal. 2019) ....................14

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
65 F.4th 698 (Fed. Cir. 2023) ....................10

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018) ....................13

*Shamoon v. City of S.A.*,
No. SA-18-CV-00718-XR, 2025 WL 1356399 (W.D. Tex. Apr. 30, 2025) ....................5

*Simio, LLC v. FlexSim Software Prods., Inc.*,
983 F.3d 1353 (Fed. Cir. 2020) ....................14

*Software Rights Archive, LLC v. Facebook, Inc.*,
485 F. Supp. 3d 1096 (N.D. Cal. 2020) ....................14

*Synchronoss Techs., Inc. v. Dropbox, Inc.*,
987 F.3d 1358 (Fed. Cir. 2021) ....................7

*Trading Techs. Int'l, Inc. v. IBG LLC*,
921 F.3d 1084 (Fed. Cir. 2019) ....................14, 18

*Trinity Info Media, LLC v. Covalent, Inc.*,
72 F.4th 1355 (Fed. Cir. 2023) ....................10

*TS Pats. LLC v. Yahoo! Inc.*,
279 F. Supp. 3d 968 (N.D. Cal. 2017), aff'd, 731 F. App'x 978 (Fed. Cir. 2018) ....................18

*Two-Way Media LTD. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017) ....................16

**Statutes**

35 U.S.C. § 101 ....................1, 9, 10, 20

35 U.S.C. § 271(a) ....................5, 7

Fed. R. Civ. P. 12(b)(6) ....................20

## I. INTRODUCTION

Plaintiff Amir Lavi's Complaint is replete with fundamental issues and Defendant Google LLC ("Google") respectfully requests that it be dismissed for three reasons. First, the Complaint's threadbare, conclusory allegations do not meet the bare minimum pleading standard. Although the Complaint purports to accuse Google Search of infringement, it does not identify any features of Google Search that meet any of the claim limitations. Rather, Lavi simply parrots each of the claim limitations and asserts, without any supporting factual allegations, that "the google.com website" meets the limitation.

Second, the Complaint, by accusing a user's device as meeting at least one claim element, concedes that Google does not directly infringe; but the Complaint does not even attempt to overcome that problem by plausibly alleging any of the additional requirements for indirect or willful infringement. Specifically, the Complaint asserts that "a user's computer, cell phone, etc." meets the "computer connected to said data network" required by asserted claim 1 of U.S. Patent No. 8,073,868 (the "'868 Patent"). *See* Dkt. No. 1 ("Compl.") ¶ 39. But the Complaint does not (and could not plausibly) allege these user devices were put into service for Google's benefit or that Google otherwise controls them. The Complaint likewise fails to provide any factual support for the allegation that Google had knowledge of either the patent or its alleged infringement. Lavi's claims for induced infringement, contributory infringement, and willfulness thus fail as a matter of law.

Finally, the asserted patent is directed to ineligible subject matter under 35 U.S.C. § 101— specifically, the abstract idea of providing related terms in an interactive GUI that allows the user to modify her search query. But the asserted claim is directed only to this result: it does not specify *how* to select related terms. Nor does it provide any improvement in GUI or other

computer functionality. Rather, it relies on common, generic computer components. Thus, the asserted claim lacks an inventive concept and claims patent-ineligible subject matter.

For all the above reasons, the Complaint should be dismissed.

## II. STATEMENT OF FACTS

### A. The asserted patent and asserted claim

The Complaint alleges that Google infringes the '868 Patent, entitled "System For Facilitating Search Over a Network," which issued on December 6, 2011, and purports to "facilitate[] the search process by suggesting relevant search keywords to the user" and enable "the creation of a detailed and precise search query" via "a user-friendly graphical user interface (GUI)." '868 Patent at 1:15-20. The GUI provides related terms to users as "graphical icons" such that the user can "operate on these offered terms and his own search keywords through a user-friendly graphical user interface (GUI) and thus filter his search." *Id.* at 2:36-46. Claim 1—the only claim specifically addressed in the Complaint—recites:

> 1. A system for generating search queries using visual manipulation of search terms to facilitate a search process over a data network, comprising:
>
> [a] a computer connected to said data network;
>
> [b.i] a related terms generator scans over said data network from said computer to obtain at least a list of terms related to an initial search query, [ii] wherein the related terms generator further obtains relationships involving said related terms and data entities at different locations in said data network, and organizes said related terms, said relationships, and said data entities in at least one data structure that represents said relationships in said data network, [iii] wherein the data structure is organized, based on at least one of data network analysis and expert knowledge, [iv] wherein the data entities in said data network are analyzed in accordance with statistical correlations of word frequencies, location, and dates within the data network;
>
> [c.i] a graphical user interface (GUI) at said computer for receiving the initial search query, providing a user with said related terms, [ii] wherein said related terms being provided as graphical icons, [iii] wherein said GUI further allows visual manipulating of said initial search query by visually placing graphical icons respective of one or more of said related terms to be included in a new refined search query in a plurality of graphical operators controlled by said GUI, each of said plurality of graphical operators applies a different operation

> on related terms placed therein, [iv] wherein said visual manipulation of said initial search query results in a new visual representation of said graphical icons respective of said one or more related terms and interrelationships of said graphical icons with said plurality of graphical operators; and
>
> [d] a query generator for generating said new refined search query by applying said plurality of graphical operators on said one or more of related terms, thereby modifying said initial search query according to said visual manipulation.

The '868 Patent admits that existing search engines were "a critical and invaluable means of providing access to the vast stores of information available on the internet," "represent[ed] a significant and integral part of all internet tools," and "provide[d] fast results and wide coverage" *Id.* at 1:23-27, 1:47-48. The problem, the patent asserts, was that users may "not have previous knowledge about the[ir] search topic or the optimal search method in related databases and/or their taxonomies." *Id.* at 2:46-50. In other words, the tools to perform the "optimal search method" admittedly predated the patent but users merely lacked knowledge of the best keywords or most optimal search methods to use. *Id.*; *see also id.* at 3:35-36 (recognizing preexisting "operators, which today are not exploited by most users."). The patent does not purport to have created any novel database structure and instead relies on preexisting databases, including the internet. *Id.* at 2:33-36 ("Presented herein is a system and method that saves time in the search process and enables efficient access to the information stored on the Internet or other database."); *see also id.* at 1:36-37, 1:65-2:4 (asserting a tool is needed for "enabling quick and easy access to the sought-after information found on the Internet or other database."), 3:27-28 (referring to pre-existing "networked databases"), 4:33-42 (referring to "specific databases" based on a "professional dictionary"). Nor does the patent require any specialized hardware. *Id.* at 3:64-66 (noting the system is "compatible with operating on portable PDAs such as hand-held computers, cell phones, etc.").

### B. The allegations against Google.

The Complaint summarily alleges that Google directly infringes claim 1 via "applications and systems under the control of Google that transmit and display search suggestions and that are made available to users." Compl. ¶ 34. The Complaint also summarily asserts that (i) "Google has induced and continues to induce users of the accused applications and systems to directly infringe one or more claims of the '868 Patent," and (ii) "By providing the accused applications and systems, Google contributes to the direct infringement of users of said applications and systems." *Id.* ¶¶ 35-36.

All but one of the Complaint's infringement allegations follow a set formula: the paragraph first alleges that the "Google Search system/application" includes or practices a claim element, quotes the claim language, and then parrots the same language and asserts it is met by "the google.com website." *See id.* ¶¶ 39-46.[1] The Complaint does not provide any screenshots of Google Search functionality or description of how any particular functionality infringes, much less include a claim chart mapping Google functionality to each of the claim elements.

The only deviation from the Complaint's formulaic regurgitation of claim language is for claim element 1.a, which requires "a computer connected to said data network" ('868 Patent at 7:9). For this limitation, the Complaint alleges that "Google's google.com website and/or its Google app is available on *a user's computer, cell phone, etc.* … Users of the Google system/application conduct searches *using personal computers, cell phones, and other devices*

[1] The only Google Search functionality related to refining queries mentioned in the Complaint is a reference to "advanced search and filtering options" in the Factual Background; but the Complaint does not mention this feature in its infringement allegations, let alone show how it relates to infringement. *Id.* ¶ 31 ("A key advantage of Google's search platform is the streamlined discovery process, which features advanced search and filtering options that allow users to quickly find what they are looking for by easily narrowing and optimizing their search options.").

while connected to Google's system over the internet." *Id.* ¶ 39 (emphasis added). In other words, it accused the *user's personal device*—not Google.

## III. ARGUMENT

### A. The Complaint fails to plausibly allege direct infringement.

#### 1. Legal standard

"The 'factual content' required to establish a direct infringement claim under 35 U.S.C. § 271(a) must specifically identify the purportedly infringing product and which of its features are involved in the infringement." *Etto IP, LLC v. Reebok Int'l Ltd.*, No. 6:23-CV-00003, 2023 WL 11983055, at *2 (W.D. Tex. July 17, 2023) (citation omitted). The plaintiff must do more than "recit[e] the claim elements and merely conclud[e] that the accused product has those elements." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). Instead, "a plaintiff must plead facts that plausibly suggest that the accused product meets each limitation of the asserted claim or claims." *Shamoon v. City of S.A.*, No. SA-18-CV-00718-XR, 2025 WL 1356399, at *4 (W.D. Tex. Apr. 30, 2025) (citation omitted).

#### 2. The Complaint fails to adequately allege that Google practices any element of the asserted claim.

For all but element 1.a ('868 Patent at 7:9), the Complaint merely restates the claim language without offering any specific factual allegation about the accused product. *See* Compl. ¶¶ 40-46. Paragraph 41 is illustrative (verbatim identical claim language bolded):

| | |
|---|---|
| <u>Limitation [b.ii] of claim 1</u><br>**wherein the related terms generator further obtains relationships involving said related terms and data entities at different locations in said data network, and organizes said related terms, said** | <u>Paragraph 41 allegations</u><br>The Google Search system/application practices the claim element: "**wherein the related terms generator further obtains relationships involving said related terms and data entities at different locations in said data network, and organizes said related terms, said relationships, and said data entities in at least one data structure that represents said relationships in said data network**." **The related terms generator** of the Google search engine **obtains relationships** |

| | |
|---|---|
| **relationships, and said data entities in at least one data structure that represents said relationships in said data network.** | **involving related terms and data entities at different locations in a data network, and organizes related terms, relationships, and data entities in at least one data structure that represents said relationships in** the **data network.** |

Nowhere in that paragraph—nor anywhere else—does the Complaint explain what it alleges constitutes the required, *inter alia*, "related terms," "relationships," "data entities at different locations," or "data structure." *See* '868 Patent at 7:12-18. The Complaint's allegations for the remaining claim elements follow the same pattern as paragraph 41. These conclusory allegations, devoid of any facts, are insufficient. *See, e.g.*, *Bot M8*, 4 F.4th at 1353; *Mullen Indus. LLC v. Meta Platforms, Inc.*, No. 1:24-cv-354-DAE, 2025 WL 326402, at *5 (W.D. Tex. Jan. 29, 2025) (dismissing complaint that "'simply parrot[s] claim language without explaining what facts show how the accused products practice the claimed artificial intelligence' in the claimed manner"). Courts in this District consistently dismiss complaints, like this one, that offer mere "threadbare recitals of the elements of its patent infringement claims." *See Etto IP*, 2023 WL 11983055, at *2; *see also AK Meeting IP LLC v. Zoho Corp.*, No. 1:22-CV-1165-LY, 2023 WL 1787303, at *5 (W.D. Tex. Feb. 6, 2023) (similar), report and recommendation adopted, 2023 WL 3035436 (W.D. Tex. Mar. 1, 2023); *De La Vega v. Microsoft Corp.*, No. W-19-CV-00612-ADA, 2020 WL 3528411, at *7 (W.D. Tex. Feb. 11, 2020) (similar).

**3. The Complaint admits a lack of direct infringement because it alleges "users'" "personal" devices—rather than Google—satisfy claim element 1.a.**

Not only does the Complaint fail to plead any facts giving rise to a plausible inference that Google infringes, but it also admits that Google does not directly infringe because it accuses users, not Google, of supplying the first element of the claimed system. "Direct infringement by 'use' of a claimed system requires use of *each and every element* of the system." *CTD Networks,*

*LLC v. Google, LLC*, 688 F. Supp. 3d 490, 500 (W.D. Tex. 2023) (quoting *Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1369 (Fed. Cir. 2021)); *see also De La Vega*, 2020 WL 3528411, at *7 (citing *Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016)). "[T]o 'use' a system for purposes of infringement, a party must put the invention into service, i.e., control th*e system as a whole and obtain benefit from it*." *CTD,* 688 F. Supp. 3d at 500 (emphasis added) (quoting *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011)). "Similarly, infringement by 'making' or 'selling' a system requires a complete infringing system: 'one may not be held liable under § 271(a) for 'making' or 'selling' less than a complete invention.'" *Id.* (quoting *Synchronoss*, 987 F.3d at 1368).

Here, the claimed system requires both hardware (i.e., element 1.a ("a computer connected to said network") and software (i.e., elements 1.b ("related terms generator"), 1.c ("graphical user interface"), and 1.d ("query generator")). But the Complaint does not allege Google: (a) "uses" the claimed system by controlling it as a whole and obtaining benefit from it, or (b) makes or sells any complete system. To the contrary, the Complaint asserts that "users"—not Google—supply the required "computer connected to said network" component via their "personal" devices to "conduct searches." *See* Compl. ¶ 39. It further alleges that the "related terms generator" element 1.b is satisfied "when a *user* initiates a search." *Id.* ¶ 40 (emphasis added). In *CTD*, the court dismissed a complaint where the plaintiff, like here, "d[id] not allege that Defendant manufactures the hardware used [in] the claimed systems" and did not "explain how Defendant, merely by providing [the accused] software, might use—much less control—a system according to the claims." *CTD,* 688 F. Supp. 3d at 501. "Merely providing software for a customer to use does not constitute direct infringement of a patent that requires a combination of both software and hardware." *Id.* Thus, because the Complaint does not (and could not) plausibly

allege that the user's "personal" device is controlled by Google and put into service for the benefit of Google, the Complaint should be dismissed.

**B. The Complaint does not plausibly allege indirect infringement.**

The Complaint conclusorily asserts induced and contributory infringement, Compl. ¶¶ 35-37, but it fails to plead the requisite scienter for either theory of indirect infringement and, for contributory infringement, fails to plead the accused system lacks substantial non-infringing uses.[2] Both "induced infringement [and] contributory infringement require[] knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015). Stating a claim for inducement requires "plead[ing] facts plausibly showing that the accused infringer specifically intended another party to infringe the patent and knew that the other party's acts constituted infringement." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (cleaned up). Contributory infringement, likewise, requires "a showing that the alleged contributory infringer knew that the combination for which his component was especially designed was both patented and infringing." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964).

The Complaint offers no facts to support its indirect infringement allegations. Indeed, it does not even allege that Google had knowledge of the patent. As to the requisite knowledge of infringement and intent to infringe, the Complaint merely recites legal elements of these statutory provisions, with no factual support. *See* Compl. ¶¶ 35-37, 47; *Etto IP*, 2023 WL 11983055, at *3 (dismissing indirect infringement claims for lack of scienter allegations).

---

[2] The indirect infringement claims also fail for an independent reason: the Complaint fails to adequately plead direct infringement, as described above. *See Nalco Co. v. Chem-Mod, LLC*, 883 F. 3d 1337, 1345, 1355, and 1357 (Fed. Cir. 2018) (no claim for indirect infringement "without any underlying act of direct infringement").

The contributory infringement claim also fails for another reason: the Complaint does not "plead facts that allow an inference that the [accused devices] have no substantial non-infringing uses." *See In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012). Here, the Complaint admits that the accused system requires "using personal computers, cell phones, and other devices while connected to Google's system over the internet," but pleads no facts supporting that those devices lack substantial non-infringing uses. Compl. ¶ 39. Nor could it. Such devices have myriad other uses than merely "connect[ing] to Google's system over the internet." *See id.* Thus, the contributory infringement claim should be dismissed.

**C. The Complaint does not plausibly allege willful infringement.**

A plaintiff alleging willful infringement must "allege facts plausibly showing that the accused infringer: (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent. " *CTD*, 688 F. Supp. 3d at 503 (internal quotation marks omitted).

The Complaint's willfulness assertion is entirely conclusory. Compl. ¶¶ 47-50. As stated above, the Complaint does not allege, even conclusorily, that Google knew of the patent, much less any facts supporting an assertion that Google knew of its alleged infringement. *See supra* Part III.B. Such allegations are insufficient to plead willfulness. *See CTD*, 688 F. Supp. 3d at 503 (dismissing willful infringement allegations under similar circumstances).

**D. The asserted claim is invalid under 35 U.S.C. § 101.**

Setting aside its egregious pleading deficiencies, the Complaint is fatally flawed for an independent reason: the asserted claim is directed towards an abstract idea and is thus ineligible under 35 U.S.C. § 101. As a threshold matter, the Complaint addresses only claim 1 of the '868 Patent. While the Complaint asserts that "at least" claim 1 is infringed, it does not identify any other claim, much less make any attempt to plead infringement of another claim. Accordingly,

the Court can dismiss the Complaint entirely if it determines that claim 1 is not patent eligible. *See Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1358 n.2 (Fed. Cir. 2023) (affirming dismissal on section 101 grounds based on analysis of only asserted claims).

**1. Legal standard**

Under the Patent Act, "abstract ideas" are patent ineligible. 35 U.S.C. § 101; *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). Determining whether patent claims are ineligible under section 101 requires a two-step inquiry. *Alice*, 573 U.S. at 216. At step one, a court determines "whether the claims at issue are directed to" an abstract idea. *Id.* at 217. If so, then at step two the court evaluates whether there exists "an inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 217-18 (cleaned up). Patentability under section 101 is a threshold legal issue that courts routinely address at the pleadings stage. *See, e.g.*, *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 702 (Fed. Cir. 2023); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018); *PerformancePartners, LLC v. FlashParking, Inc.*, 697 F. Supp. 3d 678, 685 (W.D. Tex. 2023).

**2. *Alice* step one: the asserted claim is directed to the abstract idea of providing related terms in an interactive GUI that allows the user to modify her search query.**

At step one of the *Alice* test, courts look at the focus of the claims to determine their "character as a whole." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (citation omitted). Typically, for computer-related inventions courts "ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea." *Sanderling*, 65 F.4th at 703 (citation omitted).

The claim language and specification confirm that the heart of the asserted claim is nothing more than the abstract idea of providing related terms in an interactive GUI that allows the user to modify her search query. This abstract idea is exactly how the patent describes the purported invention: an "interactive data management technology associated with a search engine . . . that suggests terms and keywords that are either closely related to the object of the search or highly unrelated to the object of the original search but included in the scope of the current search definition" presented in a "powerful graphical user interface [that] allows the user to get highly involved in the search process." '868 Patent at 3:28-35.

Claim 1 recites a system with three basic functions: (1) generating related terms; (2) providing those terms as graphical icons in a visually manipulatable user interface; and (3) generating a modified query. But the claim uses only results-oriented language without any specific means for how related terms are generated or technical means for how the GUI operates or the new query is created. '868 patent at 7:6-42. First, as to the generating related terms function, the claim provides no technical detail explaining *how* it generates the related terms. The claim is replete with high-level descriptions requiring an organized "data structure," "data entities," "data network analysis," "expert knowledge," and "statistical correlations of word frequencies, location, and dates within the data network," *see id.*, but it fails to explain how any of those things actually work. For example, the claim does not describe any technological way of performing "expert knowledge" analysis or even what informs that analysis.

Second, as to the providing graphical icons functions, the claim likewise provides no technical details about how to implement the GUI. Instead, it describes the GUI in purely functional terms that just state the *result* of what the GUI will do for the user, i.e., the GUI

provides related terms as "graphical icons," "allows visual manipulating of [the] initial search query," and includes "a plurality of graphical operators." *Id.* at 7:24-38.

Finally, as to the "query generator," the claim provides no detail beyond the result that the query generator achieves, namely generating the "new refined search query" by applying the user's visual manipulation of the GUI. *Id.* at 7:39-42.

Nor is the claim directed to a technological improvement. Indeed, the problem the patent purportedly addresses—refining a search query—is not unique to computers or the Internet. *See Collarity, Inc. v. Google Inc.*, No. 11-1103-MPT, 2015 WL 7597413, *9 (D. Del. Nov. 25, 2015) ("The concept of refining a search query is a problem humans have long dealt with, including before the advent of the Internet."); *see also Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.* (*IBM I*), 50 F.4th 1371, 1381 (Fed. Cir. 2022) (patent ineligible where "[t]he problem the [patent] purportedly solves . . . is not specific to a computing environment"). For example, a person could suggest to a friend who is looking for a Honda Civic to search more generally for a Honda because Honda manufactures Civics and because experts describe Hondas as reliable cars. The patent itself contemplates using "human subject knowledge experts" or a simple "professional dictionary" to aid in the search process. '868 Patent at 4:37-40. A human could likewise manually assess word frequencies, location, and dates, e.g., by using an index, or by consulting industry articles, and this assessment might lead the person interested in a Civic to look at Honda vehicles more generally. Nothing in the patent supports the idea that the claimed "data structure" that represents the "relationships involving [the] related terms" represents any technological improvement. Nor could it: as discussed above, the concept of relationships between terms exists in ordinary human activity and is not technological.

Indeed, the asserted claim is "drafted in such a result-oriented way" that it amounts "to encompassing the 'principle in the abstract' no matter how implemented." *See Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1343 (Fed. Cir. 2018); *see also LookSmart Grp., Inc. v. Google, LLC*, No. 24-cv-07147-JST, 2025 WL 1785343, at *4 (N.D. Cal. June 26, 2025) (finding claim related to ranking search results abstract because, among other things "at no point does claim 1 clarify what it means to 'examine content' or 'examine a probability,' and it is unclear how one is expected to calculate the content score or page weight based on these limitations."). At base, the asserted claim is directed at the idea of collecting, analyzing, organizing, and displaying information, which the Federal Circuit and district courts have "repeatedly" found abstract at step one. *See, e.g.*, *IBM I*, 50 F.4th at 1378 ("We have repeatedly held claims 'directed to collection of information, comprehending the meaning of that collected information, and indication of the results, all on a generic computer network operating in its normal, expected manner' to be abstract."); *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) ("selecting certain information, analyzing it using mathematical techniques, and reporting or displaying the results of the analysis" is abstract); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (same for "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory"); *see also Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1318 (Fed. Cir. 2016) (invalidating claim focused on enabling search of a database to identify, compare, and configure data); *Landmark Tech., LLC v. Assurant, Inc.*, No. 6:15-CV-76-RWS-JDL, 2015 WL 4388311, at *5 (E.D. Tex. July 14, 2015) (same for "searching for and retrieving information on a computer system"); *Collarity*, 2015 WL 7597413, at *4 (same for "refining search queries (i.e., questions) by switching some words used in the

query but not others"); *Software Rights Archive, LLC v. Facebook, Inc.*, 485 F. Supp. 3d 1096, 1105 (N.D. Cal. 2020) ("Although the alleged invention may obtain better search results than text-based Boolean searching, this does not represent any direct improvement to computer technology.").

Claim 1's interactive GUI for presenting related terms and allowing the user to modify her search does not render the claim any less abstract. "Simply applying the already-widespread practice of using graphics" instead of a manual or text-based environment does not transform an abstract idea into patent eligible subject matter. *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1360 (Fed. Cir. 2020) (finding patent directed to a "graphical modeling framework" and applying a "graphical process" to objects abstract). Indeed, courts have routinely found patents directed to using GUIs to improve a user's experience abstract and not directed to an improvement in computer functionality. *See, e.g.*, *Angel Techs. Grp., LLC v. Meta Platforms, Inc.*, No. 2022-2100, 2024 WL 4212196, at *4 (Fed. Cir. Sept. 17, 2024) (invalidating claims directed digital media storage and user interfaces); *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1092 (Fed. Cir. 2019) (same as to GUI for electronic trading, which "essentially describe[ ] receiving information, which the specification admits was already available to 'market makers,' . . . and displaying that information"); *RingCentral, Inc. v. Dialpad, Inc.*, 372 F. Supp. 3d 988, 998 (N.D. Cal. 2019) (same as to claims for generating and displaying user interfaces for configuring call handling rules). That is because "improving a user's experience while using a computer application is not, without more, sufficient to render the claims directed to an improvement in computer functionality." *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020).

In *IBM I*, the Federal Circuit invalidated claims directed to an allegedly "improved [graphical user interface] for displaying, filtering, and interacting with geospatial data on a map and list display.'" 50 F.4th at 1378. The court noted it has "repeatedly held claims 'directed to collection of information, comprehending the meaning of that collected information, and indication of the results, all on a generic computer network operating in its normal, expected manner' to be abstract." *Id*. Moreover, the patent was "result-oriented, describing required functions (presenting, receiving, selecting, synchronizing), without explaining how to accomplish any of the tasks." *Id*. Thus, the "claims and specification [did] not disclose a technical improvement" and the patent was "directed to an ineligible abstract idea." *Id*.

Similarly, the Federal Circuit in *International Business Machines Corp. v. Zillow Group, Inc.* (*IBM II*) evaluated a patent similar to the one here, which was "directed to the abstract idea of 'more precisely tailoring the outcome of a query by guiding users . . . to make choices about specific context variables, rather than requiring them to formulate and enter detailed search criteria.'" No. 2022-1861, 2024 WL 89642, at *2 (Fed. Cir. Jan 9, 2024). The court found that the claims "do nothing more than improve a user's experience while using a computer application," and were "precisely the types of claims that we have held are abstract at step one." *Id.* at *4. Notably, the court observed that the plaintiff "fail[ed] to explain how the claims do anything more than identify, analyze, and present certain data to a user." *Id.* (cleaned up).

Here, the claim's GUI limitations are directed to improving the *user experience* using graphical icons and known search tools, rather than any improvement in *computer functionality*. The Complaint admits that the patent is focused on "enhanc[ing] the user experience." Compl. ¶ 22; *see also* '868 Patent at Abstract ("The invention then enables the user to build complex queries combining the related terms in a visual and simple way that *facilitates the search process*

*and saves time*."), 2:38-50 ("The invention . . . *helps the user focus* on the object of the search" and "encourage[s the user] to operate on these offered terms and his own search keywords through a *user-friendly* graphical user interface (GUI)") (emphases added). Further, the "query generator" limitation, which recites "a query generator for generating said new refined search query by applying said plurality of graphical operators on said one or more of related terms, thereby modifying said initial search query according to said visual manipulation," does nothing beyond generating the "new refined" query by applying the "graphical operators," "related terms," and "said visual manipulation" of the GUI. But the claim says nothing about how these should be applied or provide any technical way of doing so. Thus, the asserted claim is directed to an abstract idea; nothing in the patent is directed to an improvement in computer functionality.

### 3. *Alice* step two: the asserted claim lacks an inventive concept.

At step two, the question is whether the elements of claim 1, either individually or in combination, contain an inventive concept sufficient to "'transform' the claimed abstract idea into a patent-eligible application" of the idea. *Alice*, 573 U.S. at 217, 221 (citation omitted). An element or combination of elements must add "significantly more" beyond the abstract idea itself. *Id.* at 218 (cleaned up). The claims themselves must provide the inventive concept "as opposed to something purportedly described in the specification." *Two-Way Media LTD. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017). Further, "[t]o salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not." *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012). A patentee cannot simply invoke "already-available computers"; "[r]ather, the components must involve more than performance of well-understood, routine, conventional activities previously known to the industry." *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607,

614 (Fed. Cir. 2016) (cleaned up). Further, the claims must describe "how those [computing] components provide a concrete solution to the problem addressed by the patent." *Affinity Labs*, 838 F.3d at 1271.

The elements of asserted claim 1, considered individually or as an ordered combination, contain no inventive concept sufficient to transform the claimed abstract idea into a patent-eligible invention. The asserted claim relies on generic computer components, e.g., "computer," "data network," "graphical user interface," and "data structure." '868 Patent at 7:6-42. While the claim also includes a "related terms generator" and "query generator," these are "nonce" terms with no meaning other than the result they seek to achieve, i.e., generating related terms and generating a query. Thus, nothing in the patent discloses using any nonconventional computer component. *See, e.g.*, *id.* at 3:64-4:2 (relying on preexisting "portable PDAs such as hand-held computers, cell phones, etc.").

The patent admits "operators" and "optimal search method[s]" existed but simply were "not exploited by most users"; thus, at most it merely surfaces to the users, in a GUI, existing and conventional search methods. *Id.* at 3:35-36. The patent likewise does not disclose any novel data structure and instead merely claims the result it seeks to achieve, i.e., an "organized" "data structure" based on at least one input (data network analysis or expert knowledge), rather than any concrete solution to the problem of data structure organization. *See id.* at 4:54-56 (referring generally to "building an indexed database" without explaining, *inter alia*, how to perform any "indexing"). Indeed, the patent does not even purport to identify any problem with how existing data structures related to search engines are organized. Courts have found such components to be conventional. *Hyper Search, LLC v. Facebook, Inc.*, No. 17-1387-CFC-SRF, 2018 WL 6617143, at *9 (D. Del. Dec. 17, 2018) (finding "a network" and "browser interface" conventional);

*Mortg. Grader*, 811 F.3d at 1324–25 (finding "'interface,' 'network,' and 'database'" are "generic computer components"); *TS Pats. LLC v. Yahoo! Inc.*, 279 F. Supp. 3d 968, 987 (N.D. Cal. 2017), aff'd, 731 F. App'x 978 (Fed. Cir. 2018) ("The 'user interface' is also generic and conventional"); *Angel Techs.*, 2024 WL 4212196, at *5 ("providing a 'graphical user interface' to implement the abstract idea" is "not sufficient to make the claim patent eligible")); *Trading Techs.*, 921 F.3d at 1093-94 (finding claims directed to GUI to help "process information more quickly . . . well-understood, routine, conventional activity that does not add something significantly more to the abstract idea").

Further, the elements merely recite the conventional, logical steps of generating related terms, organizing them in a generic data structure, presenting them via a visually manipulatable GUI, and generating a new search query. Courts routinely find such ordered steps ineligible. *See, e.g.*, *Content Extraction*, 776 F.3d at 1347-48 (claims reciting "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory" lacked inventive concept because they used "a generic scanner and computer to perform well-understood, routine, and conventional activities commonly used in industry"); *Broadcom Corp. v. Netflix Inc.*, 677 F. Supp. 3d 1010, 1022 (N.D. Cal. 2023) ("Claim 1 uses a conventional ordering of functional elements: collecting multiple sets of data related to a given phenomenon, then correlating the data, and finally storing it."); *Brightedge Techs., Inc. v. Searchmetrics, GmbH*, 304 F. Supp. 3d 859, 872 (N.D. Cal. 2018) (claims reciting "(1) 'determining rank positions for the search terms with respect to the entity and other entities'; and (2) 'multiplying the rank positions by products of estimated click rates and volumes of traffic on the network for the entity and other entities'" ineligible); *Chewy, Inc. v. Int'l Bus. Machs. Corp.*, 94 F.4th 1354,

1366-67 (Fed. Cir. 2024) ("Using a generic database to store the information used in correlating advertisements with search results is not an inventive concept.").

The same result is warranted here: the claim merely recites organizing terms and data entities in a standard database and using generic GUI elements and operators to implement the abstract idea of providing related terms in an interactive GUI that allows the user to modify her search query. Further, the claim relies on nothing more than "well-understood, routine, and conventional" technology that the patent itself admits existed, but may not have been exploited by most users. *See TLI Commc'ns*, 823 F.3d at 614 (cleaned up). When the abstract idea is removed from the asserted claim, there is no "inventive concept" that ensures the patent amounts to "significantly more than a patent upon the ineligible concept itself." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) (cleaned up). Accordingly, the asserted claim is ineligible.

**E. Leave to amend should be denied.**

Google respectfully submits that leave to amend should be denied because amendment would be futile. *See Ballard v. Devon Energy Prod. Co.*, 678 F.3d 360, 364 (5th Cir. 2012). First, the Complaint confirms that Google does not directly infringe the "computer connected to said data network" limitation, which the Complaint asserts is a user's computer, and the Complaint could not plausibly meet the requirements of indirect infringement. *See supra* Part III.A.3. Second, Lavi cannot amend around the asserted claim's ineligibility. *See Network Architecture Innovations LLC v. CC Network Inc.*, No. 2:16-CV-00914-JRG, 2017 WL 1398276, at *7 (E.D. Tex. Apr. 18, 2017) (dismissing original complaint with prejudice under section 101).

## IV. CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court dismiss the Complaint with prejudice pursuant to Rule 12(b)(6) because it fails to plead facts that plausibly allege infringement and the ’868 Patent is invalid under 35 U.S.C. § 101.

Respectfully submitted,

JACKSON WALKER LLP

Dated: July 16, 2026

By: */s/ Nathaniel St. Clair, II*

Nathaniel St. Clair, II (SBN 24071564)
nstclair@jw.com
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Tel: (214) 953-6000

Asim M. Bhansali (SBN 90001290)
abhansali@kblfirm.com
Scott W. Taylor (CA SBN 318941) (*pro hac vice* pending)
staylor@kblfirm.com
Elizabeth H. Dinh (CA SBN 329295) (*pro hac vice* pending)
edinh@kblfirm.com
KWUN BHANSALI LAZARUS LLP
555 Montgomery Street, Suite 750
San Francisco, CA 94111
Tel: (415) 630-2350

Attorneys for Defendant
GOOGLE LLC

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, the undersigned certifies that on July 16, 2026, the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system, which will serve a copy of this document on all counsel of record who have consented to electronic service through the Court's CM/ECF system.

*/s/ Nathaniel St. Clair, II*
Nathaniel St. Clair, II