**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| AMIR LAVI,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Civil Action No. 1:26-cv-00949<br><br>JURY TRIAL DEMANDED |

## FIRST AMENDED COMPLAINT

Plaintiff Amir Lavi ("Lavi" or "Plaintiff"), files this First Amended Complaint against Defendant Google LLC ("Google" or "Defendant") and as claim for relief states as follows:

## NATURE OF THE ACTION

1. This is an action for patent infringement under the Patent Laws of the United States, Title 35, United States Code, including 35 U.S.C. § 271, for infringement of United States Patent No. 8,073,868 ("the '868 Patent").

## PARTIES

2. Amir Lavi is an individual with an address of Ehan Haam 90, apt 2 6520711, Tel Aviv, Israel.

3. Defendant Google LLC ("Google") is a wholly owned subsidiary of Alphabet, Inc., and a Delaware limited liability company with a principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043. Google is registered to do business in the State of Texas and may be served through its registered agent Corporation Service Company dba CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

4. Texas is presently a mega center of Google operations, and Google maintains a

significant and longstanding physical presence in Austin, Texas, including multiple office locations employing hundreds of employees engaged in engineering, product development, technical operations, advertising, sales, cloud services, and support functions. These Austin-based employees are directly involved in the design, implementation, testing, deployment, monetization, and support of Google's accused applications and systems, including technologies that embody the infringing functionality. Further, these Austin-based operations include teams and personnel who work with and on the development of artificial intelligence ("AI") and machine-learning ("ML") technologies.

5. Google's Austin operations are ongoing, deliberate, and central to its business strategy. Google actively recruits employees in Texas, including in Austin, for technical, engineering, product, and cloud-related roles. Google publicly advertises Austin-based positions requiring advanced technical skills and experience with large-scale software systems, AI, and ML technologies that are integral to Google's core products, including Google Search.

6. Google's recruiting efforts in Texas relate to skills directly relevant to the operation, deployment, and optimization of Google Search and its search-refinement features.

7. Google also actively recruits students and early-career professionals in Texas through internships and student-research programs, including roles based in or associated with Austin. These internships serve as a pipeline for future technical staff supporting Google's products and services, including Google Search.

8. Google has been expanding rapidly in Texas, making large AI infrastructure investments around the state including new data centers and AI-oriented facilities. Recently, Google announced a $40 billion investment in Texas to expand data centers and AI infrastructure, with energy and workforce development tied to AI deployment.

9. Upon information and belief, Google's Austin operations include engineers, product managers, and technical staff with direct knowledge of the accused systems, including their architecture, data processing, user-interaction logic, and backend infrastructure. These employees possess unique, non-duplicative knowledge relevant to infringement, damages, and willfulness, making Austin a central site of relevant witnesses and evidence.

10. Upon information and belief, Google's Austin employees are involved in the deployment, support, customization, and monetization of AI- and ML-enabled systems, including AI-driven analytics and AI-enhanced products relating to improving consumer experience. These systems form part of Google's core search functionality which relies on AI and ML techniques to classify, rank, and present search results and forms an integral part of Google's products and services employed nationwide, and directly relate to the accused applications and systems.

11. Google regularly staffs AI- and ML-related roles in the Austin area, including positions requiring expertise in machine learning, data analysis, AI-enabled cloud platforms, and consumer experience. These roles are directly relevant to the accused system, and Google's Austin workforce possesses technical knowledge directly relevant to Plaintiff's claims.

12. Google has committed acts of infringement in this District by, inter alia, making, using, offering for sale, selling, and supporting the accused products and services through its Austin-based facilities, employees, and infrastructure. Google's infringing conduct is carried out in and from this District. On information and belief, Texas has one of the highest Google search activity levels in the country—millions of infringing acts occur in this District every day.

13. Google's presence in Austin is not incidental or peripheral. Rather, Google has intentionally expanded its Austin footprint as a strategic hub for its core technologies and services, and it derives significant revenue from activities conducted in and from this District.

14. Google also does business in Texas, directly and/or through intermediaries, and offers its products and services, including those accused herein of infringement, to customers and potential customers located in Texas and within this District.

15. Google's substantial operations in Austin, combined with its targeted recruitment and employment of AI/ML engineers in the area, establish that Google has continuous and systematic contacts with the Western District of Texas, and that a substantial part of the acts of infringement have occurred within this District.

**JURISDICTION**

16. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*

17. This Court has personal jurisdiction over Defendant because Defendant regularly conducts business and has committed acts of patent infringement within this District, giving rise to this action. Defendant has established minimum contacts with this forum such that the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice. Defendant has committed acts of infringement in this District, the State of Texas, and elsewhere in the United States by making, using, offering to sell, and selling its infringing applications and systems and inducing, causing, urging, encouraging, aiding, and abetting the infringement of the '868 Patent by third-party users of its applications and systems, including residents of this District.

18. Venue in this judicial district is proper under 28 U.S.C. §§ 1391 and 1400 because Defendant is registered to do business in the State of Texas and because Defendant maintains a regular and established place of business in this District, conducts business within this District,

advertises within this District, and makes, uses, offers to sell, and sells in this District, including to residents of this District, its infringing applications and systems.

19. Defendant advertises and conducts business throughout the United States, including within this District in the State of Texas. At all relevant times, Defendant was in the business of providing its method and system via its website and application throughout the United States and within this District.

## FACTUAL BACKGROUND

20. Plaintiff is the owner of all rights, title, and interest in and to United States Patent No. 8,073,868.

21. The ’868 Patent, titled “System for Facilitating Search Over a Network,” issued on December 6, 2011. A true and correct copy of the ’868 Patent is attached hereto as Exhibit A.

22. The ’868 Patent relates to providing a user friendly and intuitive online search process by suggesting relevant search keywords to the user and enabling the creation of a detailed and precise search query. The claims of the ’868 Patent disclose systems and methods for providing intelligent search functionality that enables a user to execute complex search queries in a visual and simple way that facilitates the search process and enhances the user experience by providing a seamless experience for a user based on various data inputs, including expert knowledge and statistical correlation.

23. At the time of the invention, computerized search systems generally accepted textual search queries and returned ranked search results but did not generate refined search queries through visual manipulation of graphical representations of related search terms generated from network relationship analysis and organized using data structures based upon data network analysis and expert knowledge.

24. A problem faced by users at the time of the invention when formulating a search was the user's lack of familiarity with the search subject and prior art systems not allowing a user to adequately define the necessary search parameters to effectively narrow their search. Users were often unfamiliar with common terminology associated with a subject or product or lacked the tools or resources to create a detailed and effective search query. This resulted in a frustrating user experience where a user may abandon a search without obtaining the information they sought.

25. The asserted claims of the '868 Patent improve the operation of computerized search systems by providing a computer-implemented architecture for constructing refined search queries through a specific, coordinated operation of a related terms generator, a query generator, structured data relationships, and an interactive graphical user interface. Rather than requiring a user to repeatedly reformulate keyword searches through trial and error, the claimed invention automatically identifies related search terms, organizes relationships among those terms and associated data entities, presents those related terms through an interactive graphical user interface, and generates refined search queries responsive to user interaction.

26. At the time of the invention, conventional search engines generally accepted user-entered search terms and returned ranked search results. Conventional search engines did not provide an interactive search environment that enabled users to visually construct refined search queries using computer-generated related terms, graphical icons, and graphical operators. The asserted claims recite a specific combination of computer components and operations directed to improving computerized search technology itself.

27. The claimed invention is directed to improving the process by which computerized search systems generate and refine search queries, rather than merely organizing information or displaying search results. The claimed related terms generator, query generator, and graphical user

interface integrate to generate, refine, and execute increasingly focused search queries using relationships among data entities maintained within networked data sources.

28. The claimed invention also recites a specific sequence of computer operations. The ordered combination of these limitations constitutes a particular technological process for improving computerized searching rather than merely automating a longstanding human practice.

29. The asserted claims address specific improvements in computer functionality and computerized search technology through concrete technological solutions directed to the generation, organization, visual manipulation, and refinement of search queries over a data network. The claims are directed to a particular technological implementation that improves the functioning of computer search systems themselves rather than to an abstract idea implemented using generic computer components.

30. The asserted claims of the ’868 Patent disclose inventive concepts that were not well-understood, routine, or conventional at the time of invention, including requiring specific system configurations and operations.

31. Google Search provides users with functionality for generating, refining, and executing search queries through Google's search infrastructure. Google’s accused search functionality, including its source code, receives search queries, identifies related search terms, analyzes relationships, generates refined search queries, and presents search refinements through Google’s graphical user interface.

32. Google’s search infrastructure performs and executes its operations on its distributed computing infrastructure that utilizes servers all operated and controlled by Google. The related search term functionality is generated by Google’s search system and presented to users through graphical user interfaces controlled and provided by Google.

33. Defendant designs, controls, and operates the accused systems, and controls the manner in which the claimed methods are performed through source code, software, servers, databases, and graphical user interfaces that Defendant develops, maintains, and provides to users.

34. Defendant conditions users' receipt of the benefits and functionality of the accused systems upon performing interactions, and establishes the manner and timing in which such interactions occur. Defendant's accused system/application present users with specific graphical interface elements, dictate the available interactions, determine the sequence of those interactions, and automatically perform the remaining claimed operations in response to those user interactions.

35. Google's "News From Google" blog post titled "Zooming in on an easier way to explore on Search" explains that "you're probably familiar with how you can use filters to see just videos, news, images or shopping results on Google Search. We'll now show an easy-to-scroll list of related topics alongside these filters at the top of the search results page to help you drill down or discover something new about a specific topic. You can add or remove topics, which are designated by a + symbol, to quickly zoom in or backtrack on a search." (https://blog.google/products-and-platforms/products/search/refine-search-results/).

36. The blog further explains that "when you conduct a search, our systems automatically display relevant topics for you based on what we understand about how people search and from analyzing content across the web. Both topics and filters are shown in the order that our systems automatically determine is most helpful for your specific query." (https://blog.google/products-and-platforms/products/search/refine-search-results/).

37. Defendant has been aware of the invention disclosed and claimed in the '868 Patent since the patent issued on December 6, 2011. Defendant nevertheless consciously decided to

manage and operate its website and system google.com that directly and indirectly infringes at least claims 1 and 8 of the ’868 Patent literally and/or under the doctrine of equivalents.

38. Google had actual pre-suit knowledge of the asserted patent. Google cited it as prior art in connection with at least nine of its own patent applications filed with the USPTO since as early as 2016. By way of example, the asserted patent is cited on the face of U.S. Patent Nos. 10,007,703 (which issued on June 26, 2018); 10,586,127; 10,972,530; 11,030,239; 11,087,424; 11,093,692; 11,593,906; and 11,949,733.

39. Google’s citations of the ’868 Patent span at least four families of Google patents directed to search-based content selection, share a recurring group of named inventors, and continue through the period of infringement alleged herein.

40. Furthermore, Google had post-suit knowledge of the asserted patent. Prior to the filing of this Amended Complaint, Plaintiff notified Google of the asserted patent and Plaintiff’s infringement allegations by transmitting to Google by UPS on June 2, 2026, a request to waive service pursuant to Rule 4(d) of the Federal Rules of Civil Procedure together with a copy of the Complaint (filed on April 15, 2026) identifying the asserted patent, the accused functionality, and Plaintiff's infringement allegations.

41. Google did not execute or return the requested waiver of service. Despite receiving notice of Plaintiff's allegations through the waiver request and accompanying Complaint, Google continued to make, use, operate, maintain, and provide the accused search functionality to users, instruct and encourage users how to employ it, and promote its search refinement features without obtaining a license, modifying the accused functionality to avoid infringement, or otherwise ceasing its infringing acts.

42. Based on these events, Google knew of the ’868 Patent and knew, or was willfully blind to the fact, that the operation and use of the accused Google Search functionality infringes upon one or more of its claims.

43. The Google Search system/application practices claims of the ’868 Patent when facilitating users in building search queries, including through its incorporation of ML and AI techniques. These infringing activities are central to Google’s business.

44. Google has leveraged its algorithms and data analytics to streamline processes, improve user experience, and drive business growth, and its integration of AI and ML has enabled Google to gain valuable insights into consumer behavior to personalize recommendations for its vast user base and to improve its advertising business.

45. Google has spent considerable effort in improving its user experience and user interface to create a streamlined and personal experience for shoppers. As part of these improvements, Google has specifically focused on improving its search functionality, resulting in increased market share and increased revenue, including through ad sales.

46. The Google Search platform utilizes recommendation engines that suggest relevant results based on data inputs and intelligence, including a user’s browsing history and expert input, which simplifies the search experience, saving a user time and effort.

**COUNT ONE**
**INFRINGEMENT OF U.S. PATENT NO. 8,073,868**

47. Plaintiff incorporates by reference the allegations set forth in paragraphs 1-46 herein.

48. Pursuant to 35 U.S.C. § 271(a), Defendant has directly infringed and continued to infringe (literally and/or under the doctrine of equivalents) at least claims 1 and 8 of the ’868 Patent in this District or otherwise within the United States by making, using, selling, offering to sell,

and/or importing in or into the United States without authority applications and systems under the control of Google that transmitted and displayed search suggestions and that were made available to users through applications and/or webpages owned or controlled by Google.

49. Google indirectly infringed and continued to infringe at least claims 1 and 8 of the ’868 Patent by inducement under 35 U.S.C. § 271(b). Google induced users of the accused applications and systems to directly infringe one or more claims of the ’868 Patent.

50. Google indirectly infringed and continued to infringe at least claims 1 and 8 of the ’868 Patent by contributory infringement under 35 U.S.C. § 271(c). By providing the accused applications and systems, Google contributed to the direct infringement by users of said applications and systems.

51. Defendant contributed to the infringement and continued to contribute to the infringement of at least claims 1 and 8 of the ’868 Patent because it knew that the accused application/system was infringing and was not suitable for substantial non-infringing use.

52. Plaintiff alleges infringement by Defendant’s application/system, including the Google Search website, that employed and continued to employ a system for generating search queries using visual manipulation of search terms to facilitate a search process over a data network and all claim elements recited in at least claim 1 and claim 8. *See* Exhibit A.

53. Google controlled and continued to control the operation of the accused search system, including the source code responsible for receiving search requests, generating related terms, organizing data relationships, producing refined search queries, and providing the corresponding graphical user interface Google presents to users.

54. The Google Search system/application practiced and continued to practice claim 1 of the ’868 Patent and includes “[a] system for generating search queries using visual manipulation

of search terms to facilitate a search process over a data network." The accused Google Search system included and continued to include one or more networked computers operating under Google's direction and control that solicit and receive search requests, process search queries, identify related search terms, organize relationships among data entities, generate refined search queries, and return search results to provide users with a system for visual manipulation of search terms. Google provided and continued to provide the entire accused system utilized by users to facilitate the search process over a data network. Furthermore, Google employees test and demo Google Search on Defendant's own machines (including those in Austin, Texas) and encouraged and continued to encourage Defendant's millions of users in the U.S. to use the system.




55. The Google Search system/application included and continued to include the claim element "a computer connected to said data network." Google's computers/servers are connected to a data network. These networked computers/servers performed and continue to perform the claimed search-query generation functionality.

56. The Google Search system/application included and continued to include the claim element "a related terms generator scans over said data network from said computer to obtain at least a list of terms related to an initial search query." Upon receipt of an initial search query, Google's search infrastructure identified and continued to identify search terms related to the user's query and presented and continued to present related search terms through Google's graphical user interface. The related terms were, and continue to be, generated by source code

developed by Google and executed within Google's search infrastructure based upon relationships identified among indexed information maintained by Google.




57. The Google Search system/application practiced and continued to practice the claim element: "wherein the related terms generator further obtains relationships involving said related terms and data entities at different locations in said data network, and organizes said related terms, said relationships, and said data entities in at least one data structure that represents said relationships in said data network." Google's search infrastructure identified and continue to identify relationships among search terms, indexed data, data entities, and other information maintained throughout Google's search databases at various locations in the data network. Those relationships were, and continue to be, maintained and utilized by Google's search systems to identify search refinements responsive to a user's initial query and to generate additional related search terms presented through Google's search interface. Google's related terms generator organized and continues to organize related terms, relationships, and data entities in at least one data structure that represents said relationships in the data network.

58. The Google Search system/application practiced and continued to practice the claim element: "wherein the data structure is organized, based on at least one of data network analysis and expert knowledge." On information and belief, the Google Search infrastructure organized and continued to organize information used to generate related search terms through structured data maintained by Google, including information derived from analysis of indexed web content, relationships among data entities, statistical analysis, ML and/or AI data, and other

computational techniques.

59. The Google Search system/application practiced and continued to practice the claim element: "wherein the data entities in said data network are analyzed in accordance with statistical correlations of word frequencies, location, and dates within the data network." The data entities of the Google system/application in the data network were, and continue to be, analyzed in accordance with statistical correlations of word frequencies, location, and dates within the data network, including ML and/or AI analysis of relevant data. The Google system determined and continued to determine which related search terms and search refinements should be generated in response to a user's search request.

60. The Google Search system/application practiced and continued to practice the claim element: "a graphical user interface (GUI) at said computer for receiving the initial search query, providing a user with said related terms, wherein said related terms being provided as graphical icons." Google provided and continues to provide users, including Google employees who test and demo Google Search on Defendant's own machines (including those in Austin, Texas), with a graphical search interface that received an initial search query, presented related search terms as graphical search refinements (also referred to by Google in various contexts as refinement chips, refinements, and refinement labels) generated by Google's search systems, and permitted users to interact with those graphical search refinements to modify the scope of the search being performed.







61. The Google Search_system/application practiced and continued to practice the claim element: "wherein said GUI further allows visual manipulating of said initial search query by visually placing graphical icons respective of one or more of said related terms to be included in a new refined search query in a plurality of graphical operators controlled by said GUI, each of said plurality of graphical operators applies a different operation on related terms placed therein, wherein said visual manipulation of said initial search query results in a new visual representation of said graphical icons respective of said one or more related terms and interrelationships of said graphical icons with said plurality of graphical operators." The google.com website GUI allowed and continues to allow visual manipulation of the initial search query by placing graphical icons respective of one or more search terms in a plurality of graphical operators controlled by the GUI.

Once the graphical operators were applied to the related terms, the visual manipulation resulted in a new visual representation of graphical icons.




Google's search interface permitted and continues to permit users to interact with search refinements presented by Google and to modify the scope of the search through selection of related search terms and other graphical interface elements generated by Google's search systems. Those user interactions suggested and encouraged by Google resulted and continue to result in modified search queries processed by Google's search infrastructure.

62. The Google Search system/application practiced and continued to practice the claim element: "a query generator for generating said new refined search query by applying said plurality of graphical operators on said one or more of related terms, thereby modifying said initial search query according to said visual manipulation." The Google Search system used and continues to use a query generator for producing new refined searches by modifying the initial search query based on user input.




After a user interacted with search refinements presented by Google through its graphical interface, Google's search infrastructure generated and continued to generate and execute a modified search query corresponding to the user's interaction that was encouraged by Google. Upon information

and belief, Google's query-processing source code generated and continues to generate the refined search query and performed the corresponding search using Google's distributed computing infrastructure.

63. The Google Search system/application practiced and continued to practice claim 8 of the '868 Patent as it is a "computer implemented method for generating search queries using visual manipulation of search terms to facilitate a search process over a data network." Google computers and servers implemented and continue to implement a method that facilitates a search process over a data network.

64. The accused Google Search method received and continued to receive "an initial search query as a visual representation, said visual representation includes at least one search term as an initial graphical icon." The Google Search method received and continues to receive an initial search query from a user, which was a visual representation and included several search terms as a collection of graphical icons.




65. The accused Google Search method scanned and continued to scan "over said network and, based on said scan, provide at least a list of related terms associated with said initial search query." Google Search scanned and continues to scan its network and provided a list of related terms.




66. The Google Search "related terms are being provided as additional graphical icons, wherein the scanning includes obtaining relationships involving said related terms and data entities at different locations in said data network, and organizing said related terms, said relationships,

and said data entities in at least one data structure that represents said relationships in said data network." The related terms were provided as graphical icons. The scanning that resulted in providing these icons obtained relationships involving the related terms and data entities from various locations in the data network. On information and belief, Google Search organized and continues to organize these elements in at least one data structure that represents the relationships.




67. The data structure of the Google Search method was and continued to be "organized, based on at least one of data network analysis and expert knowledge, wherein the data entities in said data network are analyzed in accordance with statistical correlations of word frequencies, location, and dates within the data network." On information and belief, the Google Search method's data structure was organized and continues to be organized based on various data inputs, including at least expert knowledge and statistical correlation.

68. The accused Google Search method encouraged and continued to encourage and enable a user to visually manipulate its initial search query by visually placing one or more of said initial graphical icon and said additional graphical icons respective of one or more related terms to be included in a new refined search query into a plurality of graphical operators; each graphical operator applied a different operation on related terms placed therein, wherein said visual manipulation resulted in a new visual representation of graphical icons respective of said one or more related terms and interrelationships of said graphical icons with said plurality of graphical operators.

69. The accused Google Search method generated and continued to generate a new refined search query by applying said plurality of graphical operators on said one or more related terms, thereby modifying said initial search query according to said visual manipulation:




70. Google's search functionality was designed to assist users in progressively refining search requests by presenting additional search information responsive to earlier search activity. Upon information and belief, Google generated and continues to generate those refinements by analyzing relationships among indexed information maintained within Google's search systems rather than requiring users to repeatedly reformulate entirely new keyword searches.

71. Google had knowledge of the asserted patent since it issued, and had actual knowledge of the asserted patent and Plaintiff's allegations of infringement at least since the prosecution of Google's own patent applications that cite the '868 Patent as prior art.

72. Despite notice of infringement, Defendant performed and continued to perform affirmative acts that constitute infringement, including offering for sale, selling, distributing, promoting, or providing support and back-end management and service for its infringing application with the knowledge or willful blindness that its conduct would induce its customers to infringe the '868 Patent's asserted claims.

73. As a result of Defendant's infringement of the '868 Patent's asserted claims, Plaintiff has suffered monetary losses for which Plaintiff is entitled to an award of damages that are adequate to compensate Plaintiff for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

74. Defendant's infringement of the '868 Patent was deliberate, willful, and with full knowledge, or willful blindness to knowledge, of the '868 Patent.

75. Plaintiff has suffered damages in an amount to be determined at trial by reason of Defendant's willful infringement of the '868 Patent.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays that this Court enter judgment against Defendant and in favor of Plaintiff:

A. Declaring that Plaintiff is the owner of all right, title, and interest in and to United States Patent No. 8,073,868 together with all rights of recovery under such patent for past and future infringement thereof;

B. Declaring that United States Patent No. 8,073,868 was valid and enforceable in law during the period of infringement and that Defendant had infringed said patent;

C. Awarding to Plaintiff its damages caused by Defendant's infringement of United States Patent No. 8,073,868 including an assessment of pre-judgment and post-judgment interest and costs;

D. Declaring that Defendant's infringement has been willful and said damages be trebled pursuant to 35 U.S.C. § 284;

E. Declaring that this is an exceptional case and awarding to Plaintiff its costs, expenses and reasonable attorney fees pursuant to 35 U.S.C. § 285; and

F. Awarding to Plaintiff such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

In accordance with Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury for all issues triable by jury.

Dated: August 6, 2026

Respectfully Submitted,

*/s/ Katherine P. Chiarello*
Katherine P. Chiarello
Texas State Bar No. 24006994
katherine@bccaustin.com
**BOTKIN CHIARELLO CALAF PLLC**
1209 Nueces Street
Austin, Texas 78701
T: (512) 615-2341
F: (737) 289-4695

Dariush Keyhani (*admitted pro hac vice*)
District of Columbia Bar No. 1031500
Frances H. Stephenson (*admitted pro hac vice*)
New York Registration No. 5206495
Scott Draffin (*admitted pro hac vice*)
New York Registration No. 6095988
KEYHANI LLC
1050 30th Street NW
Washington, DC 20007
Phone: (202) 748-8950
dkeyhani@keyhanillc.com
fstephenson@keyhanillc.com
sdraffin@keyhanillc.com

*Attorneys for Plaintiff Amir Lavi*

## CERTIFICATE OF SERVICE

I certify that on August 6, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record who have appeared in this case.

*/s/ Katherine P. Chiarello*
Katherine P. Chiarello