**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| AMIR LAVI,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Civil Action No. 1:26-cv-00949 |

**<u>DEFENDANT GOOGLE LLC'S MOTION TO DISMISS PLAINTIFF AMIR LAVI'S FIRST AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 1

A. The asserted patent and asserted claims ..... 1

B. The allegations against Google ..... 4

III. ARGUMENT ..... 4

A. The FAC fails to plausibly allege direct infringement ..... 4

1. Legal standard ..... 4

2. The FAC fails to adequately allege that Google practices any element of the asserted claims. ..... 5

3. The FAC admits the accused functionality cannot meet all claim elements. ..... 7

B. The FAC does not plausibly allege indirect infringement ..... 10

C. The FAC does not plausibly allege willful infringement ..... 12

D. The asserted claim is invalid under 35 U.S.C. § 101. ..... 12

1. Legal standard ..... 12

2. Claim 1 is representative ..... 13

3. *Alice* step one: the representative claim is directed to the abstract idea of providing related terms in an interactive GUI that allows the user to modify her search query. ..... 13

4. *Alice* step two: the asserted claim lacks an inventive concept. ..... 18

IV. CONCLUSION ..... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Affinity Labs of Tex., LLC v. Amazon.com Inc.*,

838 F.3d 1266 (Fed. Cir. 2016)........................................................................................ 19, 18

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*,

97 F.4th 1371 (Fed. Cir. 2024) ............................................................................................. 18

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,

573 U.S. 208 (2014)................................................................................................. 12, 13, 18

*Angel Techs. Grp., LLC v. Meta Platforms, Inc.*,

No. 2022-2100, 2024 WL 4212196 (Fed. Cir. Sept. 17, 2024) ........................................... 16, 19

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,

377 U.S. 476 (1964)............................................................................................................. 10

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*,

687 F.3d 1266 (Fed. Cir. 2012)............................................................................................. 18

*BillJCo, LLC v. Apple Inc.*,

583 F. Supp. 3d 769 (W.D. Tex. 2022).................................................................................. 12

*Bot M8 LLC v. Sony Corp. of Am.*,

4 F.4th 1342 (Fed. Cir. 2021) ........................................................................................ 5, 6, 7

*BSG Tech LLC v. Buyseasons, Inc.*,

899 F.3d 1281 (Fed. Cir. 2018)............................................................................................. 20

*Collarity, Inc. v. Google Inc.*,

No. 11-1103-MPT, 2015 WL 7597413 (D. Del. Nov. 25, 2015) ............................................. 15

*Commil USA, LLC v. Cisco Sys., Inc.*,

575 U.S. 632 (2015)........................................................................................... 10

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,

776 F.3d 1343 (Fed. Cir. 2014)........................................................................ 13, 20

*Contiguity, LLC v. Conduent Bus. Servs., LLC*,

No. W-23-CV-00038-XR, 2024 WL 252068 (W.D. Tex. Jan. 22, 2024) ................................ 7, 9

*CTD Networks, LLC v. Google, LLC*,

688 F. Supp. 3d 490 (W.D. Tex. 2023)........................................................................ 12

*Customedia Techs., LLC v. Dish Network Corp.*,

951 F.3d 1359 (Fed. Cir. 2020)........................................................................ 16

*De La Vega v. Microsoft Corp.*,

No. W-19-CV-00612-ADA, 2020 WL 3528411 (W.D. Tex. Feb. 11, 2020)............................... 5

*Elec. Power Grp., LLC v. Alstom S.A.*,

830 F.3d 1350 (Fed. Cir. 2016)........................................................................ 13

*Etto IP, LLC v. Reebok Int'l Ltd.*,

No. 6:23-CV-00003, 2023 WL 11983055 (W.D. Tex. July 17, 2023)............................... 5, 7, 11

*Hyper Search, LLC v. Facebook, Inc.*,

No. 17-1387-CFC-SRF, 2018 WL 6617143 (D. Del. Dec. 17, 2018)........................................ 19

*In re TLI Commc'ns LLC Pat. Litig.*,

823 F.3d 607 (Fed. Cir. 2016)........................................................................ 18

*Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.* (*IBM I*),

50 F.4th 1371 (Fed. Cir. 2022) ........................................................................ passim

*Interactive Content Engines, LLC v. Apple Inc.*,

No. 7:25-cv-00353-DC, Dkt. No. 32 (W.D. Tex. Aug. 5, 2026) .................................................. 5

*Interval Licensing LLC v. AOL, Inc.*,

896 F.3d 1335 (Fed. Cir. 2018) .................................................................................... 15

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,

869 F.3d 1372 (Fed. Cir. 2017) .................................................................................... 10

*LookSmart Grp., Inc. v. Google, LLC*,

No. 24-cv-07147-JST, 2025 WL 1785343 (N.D. Cal. June 26, 2025) ....................................... 15

*Monolithic Power Sys., Inc. v. Meraki Integrated Circuit (Shenzhen) Tech., Ltd.*,

No. 6:20-CV-008876-ADA, 2021 WL 3931910 (W.D. Tex. Sept. 1, 2021) ............................. 11

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*,

811 F.3d 1314 (Fed. Cir. 2016) .................................................................................... 19

*Mullen Indus. LLC v. Meta Platforms, Inc.*,

No. 1:24-cv-354-DAE, 2025 WL 326402 (W.D. Tex. Jan. 29, 2025) .......................................... 7

*Nalco Co. v. Chem-Mod, LLC*,

883 F.3d 1337 (Fed. Cir. 2018) .................................................................................... 10

*Network Architecture Innovations LLC v. CC Network Inc.*,

No. 2:16-CV-00914-JRG, 2017 WL 1398276 (E.D. Tex. Apr. 18, 2017) ................................. 20

*Network Sys. Techs., LLC v. Qualcomm Inc.*,

No. 1:22-CV-01331, 2023 WL 11833572 (W.D. Tex. July 21, 2023) ....................................... 12

*Ottah v. Fiat Chrysler*,

884 F.3d 1135 (Fed. Cir. 2018) .................................................................................. 7, 9

*PerformancePartners, LLC v. FlashParking, Inc.*,

697 F. Supp. 3d 678 (W.D. Tex. 2023)........................................................................ 13

*RingCentral, Inc. v. Dialpad, Inc.*,

372 F. Supp. 3d 988 (N.D. Cal. 2019) ........................................................................ 16

*Sanderling Mgmt. Ltd. v. Snap Inc.*,

65 F.4th 698 (Fed. Cir. 2023) ........................................................................ 13

*Shamoon v. City of S.A.*,

No. SA-18-CV-00718-XR, 2025 WL 1356399 (W.D. Tex. Apr. 30, 2025) ................................ 5

*Simio, LLC v. FlexSim Software Prods., Inc.*,

983 F.3d 1353 (Fed. Cir. 2020)........................................................................ 16

*Software Rights Archive, LLC v. Facebook, Inc.*,

485 F. Supp. 3d 1096 (N.D. Cal. 2020) ........................................................................ 16

*ThroughPuter, Inc. v. Amazon Web Servs., Inc.*,

No. 1:25-cv-01623-DAE, Dkt. No. 40 (W.D. Tex. Aug. 11, 2026) ........................................... 11

*Trading Techs. Int'l, Inc. v. IBG LLC*,

921 F.3d 1084 (Fed. Cir. 2019)........................................................................ 16

*Trinity Info Media, LLC v. Covalent, Inc.*,

72 F.4th 1355 (Fed. Cir. 2023) ........................................................................ 13

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,

874 F.3d 1329 (Fed. Cir. 2017)........................................................................ 18

**Statutes**

35 U.S.C. § 101........................................................................ 1, 12

35 U.S.C. § 271(a) ........................................................................ 5

## I. INTRODUCTION

Plaintiff Amir Lavi's First Amended Complaint ("FAC") demonstrates that Plaintiff cannot cure the fatal flaws in his claims, which fail for two independent reasons: (i) the FAC fails to state a plausible claim for infringement, and (ii) the patent is invalid under 35 U.S.C. § 101.

After failing to include any factual allegations in the original Complaint, the FAC now includes conclusory statements paraphrasing the claim limitations and screenshots from google.com, without explaining *how* those screenshots show that Google meets the claim limitations. In reality, the screenshots demonstrate the accused functionality does not infringe. Thus, the direct infringement claims fail. Plaintiff's indirect and willful infringement claims fare no better. The allegations regarding both Google's purported knowledge of infringement and intent to infringe remain conclusory and entirely lack factual support.

Separately, the patent is directed to the abstract idea of providing related terms in an interactive graphical user interface ("GUI") that allows the user to modify her search query. But the asserted claims' results-oriented language does not specify *how* to select related terms nor provide any technical improvement in GUI or other computer functionality. The FAC's new, conclusory allegations of inventiveness cannot overcome the claims themselves.

The FAC thus demonstrates that amendment would be futile; accordingly, Google respectfully requests it be dismissed with prejudice.

## II. STATEMENT OF FACTS

### A. The asserted patent and asserted claims

The FAC alleges that Google infringes U.S. Patent No. 8,073,868 (the "'868 Patent"), entitled "System For Facilitating Search Over a Network," which issued on December 6, 2011 and expired June 10, 2026. It purports to "facilitate[] the search process by suggesting relevant

search keywords to the user" in the form of "graphical icons." *See* '868 Patent (Dkt. No. 21-1) at 1:15-20; 7:25-27; 8:4-7. The user can "operate on these offered terms and his own search keywords through a user-friendly graphical user interface (GUI)" to create"a detailed and precise search query." *Id.* at 1:18-19, 2:43-45. Asserted claims 1 and 8 are substantially similar:

| **Claim 1** | **Claim 8** |
|---|---|
| 1. A system for generating search queries using visual manipulation of search terms to facilitate a search process over a data network, comprising: | 8. A computer implemented method for generating search queries using visual manipulation of search terms to facilitate a search process over a data network, comprising: |
| [a] a computer connected to said data network; | |
| [b.i] a related terms generator scans over said data network from said computer to obtain at least a list of terms related to an initial search query,<br><br>[ii] wherein the related terms generator further obtains relationships involving said related terms and data entities at different locations in said data network, and organizes said related terms, said relationships, and said data entities in at least one data structure that represents said relationships in said data network,<br>[iii] wherein the data structure is organized, based on at least one of data network analysis and expert knowledge,<br>[iv] wherein the data entities in said data network are analyzed in accordance with statistical correlations of word frequencies, location, and dates within the data network; | [a] receiving an initial search query as a visual representation, said visual representation includes at least one search term as an initial graphical icon;<br><br>[b.i] scanning over said network and, based on said scan, providing at least a list of related terms associated with said initial search query,<br>[ii] wherein said related terms are being provided as additional graphical icons,<br>[iii] wherein the scanning includes obtaining relationships involving said related terms and data entities at different locations in said data network, and organizing said related terms, said relationships, and said data entities in at least one data structure that represents said relationships in said data network,<br>[iv] wherein the data structure is organized, based on at least one of data network analysis and expert knowledge,<br>[v] wherein the data entities in said data network are analyzed in accordance with statistical correlations of word frequencies, location, and dates within the data network; |
| [c.i] a graphical user interface (GUI) at said | |

| | |
|---|---|
| computer for receiving the initial search query, providing a user with said related terms,<br>[ii] wherein said related terms being provided as graphical icons,<br>[iii] wherein said GUI further allows visual manipulating of said initial search query by visually placing graphical icons respective of one or more of said related terms to be included in a new refined search query in a plurality of graphical operators controlled by said GUI, each of said plurality of graphical operators applies a different operation on related terms placed therein,<br>[iv] wherein said visual manipulation of said initial search query results in a new visual representation of said graphical icons respective of said one or more related terms and interrelationships of said graphical icons with said plurality of graphical operators; and | [c.i] enabling a user to visually manipulate said initial search query by visually placing one or more of said initial graphical icon and said additional graphical icons respective of one or more related terms to be included in a new refined search query in a plurality of graphical operators, each of said plurality of graphical operators applies a different operation on related terms placed therein,<br>[ii] wherein said visual manipulation results in a new visual representation of graphical icons respective of said one or more related terms and interrelationships of said graphical icons with said plurality of graphical operators; and |
| [d] a query generator for generating said new refined search query by applying said plurality of graphical operators on said one or more of related terms, thereby modifying said initial search query according to said visual manipulation. | [d] generating said new refined search query by applying said plurality of graphical operators on said one or more of related terms, thereby modifying said initial search query according to said visual manipulation. |

’868 Patent at claim 1, 8 (substantially similar language emphasized).

The ’868 Patent admits that internet search engines and “optimal search method[s]” predated the patent, but asserts that users may “not have previous knowledge about the[ir] search topic or the optimal search method[s].” *Id.* at 2:46-50; *see also id.* at 3:35-36 (recognizing preexisting “operators, which today are not exploited by most users.”). The patent does not purport to create any novel database structure and instead relies on existing databases. *See, e.g.*, *id.* at 2:33-36 (purporting to “enable[] efficient access to the information stored on the Internet or other database”), 3:27-28 (referring to pre-existing “networked databases”), 4:33-42 (referring to “specific databases” based on a “professional dictionary”).

### B. The allegations against Google

The FAC summarily alleges that Google directly infringes claims 1 and 8 via "applications and systems under the control of Google that transmitted and displayed search suggestions and that were made available to users through applications and/or webpages owned or controlled by Google." FAC ¶ 48. The FAC also summarily asserts that (i) "Google induced users of the accused applications and systems to directly infringe one or more claims of the '868 Patent," and (ii) "By providing the accused applications and systems, Google contributed to the direct infringement by users of said applications and systems." *Id.* ¶¶ 49-50.

While the FAC refers to Google Search and/or google.com as the infringing product, the only allegedly infringing functionality the FAC identifies is the query refinement option on the "Images" tab of Google Search ("Images chips"), *see, e.g.*:




FAC ¶ 56. The FAC does not include claim charts. Instead, for some limitations, it provides screenshots like the one above, *id.* ¶¶ 54-70; but even for those limitations, it does not describe *how* the functionality depicted in the screenshot meets the claim element. Indeed, none of the FAC's textual allegations even reference the included screenshots, much less explain how they relate to each limitation. *See id.* ¶¶ 54, 56, 60-62, 64-66, 69.

## III. ARGUMENT

### A. The FAC fails to plausibly allege direct infringement.

#### 1. Legal standard

"The 'factual content' required to establish a direct infringement claim under 35 U.S.C. §

271(a) must specifically identify the purportedly infringing product and which of its features are involved in the infringement." *Etto IP, LLC v. Reebok Int'l Ltd.*, No. 6:23-CV-00003, 2023 WL 11983055, at *2 (W.D. Tex. July 17, 2023) (citation omitted). The plaintiff must do more than "recit[e] the claim elements and merely conclud[e] that the accused product has those elements." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). Instead, "a plaintiff must plead facts that plausibly suggest that the accused product meets each limitation of the asserted claim or claims." *Shamoon v. City of S.A.*, No. SA-18-CV-00718-XR, 2025 WL 1356399, at *4 (W.D. Tex. Apr. 30, 2025) (citation omitted).

#### 2. The FAC fails to adequately allege that Google practices any element of the asserted claims.

The FAC does not plead facts suggesting that the accused Image chips (or any other Google functionality) meets each limitation of the asserted claims. Rather, the FAC includes screenshots of Image chips for some—but not all—claim limitations, paraphrases the limitations, and asserts the "Google Search system/application" and "method" meet the claims. *See* FAC ¶¶ 54-70. But nowhere does the FAC explain how the screenshots plausibly show infringement. Merely parroting the claim language and including screenshots with no explanation of *how* those screenshots meet the limitations, does not state a claim for infringement. *See, e.g.*, *Interactive Content Engines, LLC v. Apple Inc.*, No. 7:25-cv-00353-DC, Dkt. No. 32 (W.D. Tex. Aug. 5, 2026) (dismissing complaint under similar circumstances); *De La Vega v. Microsoft Corp.*, No. W-19-CV-00612-ADA, 2020 WL 3528411, at *6-7 (W.D. Tex. Feb. 11, 2020) (same).

*Interactive Content* is instructive. There, the court dismissed a complaint that included claim charts with pictures of the accused products while offering "a near word-for-word recitation of the claim limitations when attempting to map the [accused products]." *Interactive Content*, No. 7:25-cv-00353-DC, Dkt. No. 32 at 11. The court noted that the plaintiff

"technically include[d] a written explanation to accompany the photographs," but the explanation was, "in effect, no explanation at all" because it "either fail[ed] to 'identify the parts of the allegedly infringing instrumentality that perform the limitation or allege how the identified parts meet the text of the limitation.'" *Id.* at 11-12. Here, the FAC does even less; it merely includes scattered screenshots for some limitations without explaining how the depicted functionality meets those limitations. *See* FAC ¶¶ 54-70.

Moreover, for other limitations, there are no screenshots; the FAC simply quotes the element verbatim then paraphrases the element without any substantive allegations. Paragraph 57, quoting claim 1[b.ii], is illustrative:

> The Google Search system/application practiced and continued to practice the claim element: "**wherein the related terms generator further obtains relationships involving said related terms and data entities at different locations in said data network, and organizes said related terms, said relationships, and said data entities in at least one data structure that represents said relationships in said data network**." Google's search infrastructure identified and continue to identify **relationships** among search terms, indexed data, **data entities**, and other information maintained throughout Google's search databases at various locations in the **data network**. Those **relationships** were, and continue to be, maintained and utilized by Google's search systems to identify search refinements responsive to a user's initial query and to generate additional **related** search terms presented through Google's search interface. Google's **related terms generator** organized and continues to **organize related terms, relationships, and data entities in at least one data structure that represents said relationships in** the **data network.**

FAC ¶ 57 (emphasis added). Nowhere in that paragraph (or elsewhere) does the FAC explain what it alleges constitutes the required "relationships," "data entities at different locations," or "data structure" elements. *See also id*. ¶¶ 58, 66, 67 (making similarly conclusory allegations "on information and belief" regarding the required "data structure").

Such conclusory allegations devoid of any facts are insufficient. *See Bot M8*, 4 F.4th at 1353. Courts in this District consistently dismiss complaints like this that offer mere "threadbare recitals of the elements of its patent infringement claims." *See Etto IP*, 2023 WL 11983055, at

*2; *see also Mullen Indus. LLC v. Meta Platforms, Inc.*, No. 1:24-cv-354-DAE, 2025 WL 326402, at *5 (W.D. Tex. Jan. 29, 2025). The same result is warranted here.

**3. The FAC admits the accused functionality cannot meet all claim elements.**

Dismissal at the pleading stage is appropriate when an accused product "cannot plausibly be construed to include or be the equivalent of [the claim limitation]." *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141–42 (Fed. Cir. 2018). A finding of implausibility is not "premature claim construction" when an allegation is "implausible on [its] face." *Mullen Indus.*, 2025 WL 326402, at *4; *see also Contiguity, LLC v. Conduent Bus. Servs., LLC*, No. W-23-CV-00038-XR, 2024 WL 252068, at *2-3 (W.D. Tex. Jan. 22, 2024) (dismissing complaint where allegations "are actually inconsistent with and contradict infringement") (citing *Bot M8*, 4 F.4th at 1354).

Here, even if the Court were to look past the FAC's conclusory allegations, its direct infringement allegations still fail because they actually demonstrate that the accused functionality does not do what the asserted claims require.

**a. The screenshots show that the accused functionality does not include "operators."**

The asserted claims require a GUI which allows the user to "visually manipulate" her initial search query "by visually placing graphical icons respective of one or more of said related terms to be included in a new refined search query in a ***plurality*** of graphical ***operators…***each of said plurality of graphical ***operators appl[ying] a different operation*** on related terms placed therein." '868 Patent at 7:29-34, 8:21-27 (emphases added). The patent explains that operators "provide the user with a plurality of options," including "defining relationships between the search expression and related terms including proximity and frequency of appearance, Boolean operators, operators identifying related terms that are to be included in the search, and identifying related terms that are to be excluded from the search." *Id.* at 5:49-56. That is,

"operators" allow the user to specify ***how*** the terms should be "applie[d]" to the query: e.g., included in, excluded from, in the same sentence as, etc. *Id.*, Figs. 5-19.

The FAC does not even attempt to identify a "plurality" of "operators." This is unsurprising because the screenshots in the FAC confirm that there is ***no*** functionality that could plausibly constitute the claimed "plurality of graphical operators":




FAC ¶ 61 (discussing claim 1[c.iii-iv]; *see also id.* ¶ 69 (discussing claim 8[d] using portion of same screenshot). When a user clicks on the "Gibson les" chip, those words are simply added to the query in the search box. *See id.* ¶ 60 (showing that each button that is selected results in the word(s) being added to the query). The FAC provides no factual support for the bald allegations that the user can "visually place" the related terms "in a plurality of graphical operators" each of which "applies a different operation on related terms placed therein." Nor could it plausibly do so. As the screenshots confirm, the accused functionality includes no operators, and certainly not a "plurality" of operators in which users can "place" the related terms each of which applies a "different operation" on the terms. Rather, the accused functionality only allows users to click on chips (not "visually place" them), which results in adding the words to the search query (without multiple "different operation[s]" the users can apply to the terms).[1] This is "actually

[1] For the same reasons, the accused functionality does not meet the last limitation of either claim 1 or 8, which require "applying said ***plurality of graphical operators*** on said one or more of related terms." *See* '868 Patent at 7:39-42 (claim 1[d]), 8:32-35 (claim 8[d]) (emphasis added).

inconsistent with and contradict[s] infringement." *Contiguity*, 2024 WL 252068, at *2-3; *see also Ottah*, 884 F.3d at 1141-42 (affirming dismissal when allegations are implausible on their face).

**b. The screenshots do not depict "an initial search query as visual representation" that "includes at least one search term as an initial graphical icon."**

The FAC similarly demonstrates that the accused functionality does not meet claim 8's first limitation: "receiving an initial search query as a visual representation, said visual representation includes ***at least one search term as an initial graphical icon***." *See* '868 Patent at 8:1-3 (emphasis added). This claim requires receiving "an initial search query" that includes a "graphical icon," *i.e.* something *other* than text. *Id.*, claim 8[i] ("at least one search term as an initial ***graphical icon***") (emphasis added). Paragraph 64 quotes this claim limitation and includes a single screenshot, which does not depict a query (and, in fact, crops out the Search box), and instead depicts the Images chips provided to the user ***in response*** to a search query:




FAC ¶ 64.

Fatally, screenshots of the accused functionality elsewhere in the FAC confirm that the initial query provided by the user—and received by Google—is solely a text query:




*Id.* ¶ 56 (depicting the "receipt of an initial search query" for claim limitation 1[b]). For instance, in the screenshot above, the initial query is the ***text string*** "guitar" and, in response to that query, Image chips (e.g., "Electric") are displayed below the search box. The screenshots

also confirm that when the user selects one or more of the Image chips, the resulting modified query is also ***text only***—not a "visual representation" or "graphical icon":




*Id.* ¶ 69. Thus, the FAC provides no factual support for the allegation that the limitation "receiving an initial search query as a visual representation, said visual representation includes at least one search term as an initial graphical icon" is met. To the contrary, the allegations are implausible and the cited evidence is contrary to infringement.

As discussed *supra* Part III.A, the claims for direct infringement should be dismissed.

### B. The FAC does not plausibly allege indirect infringement.

A claim for indirect infringement fails "without an underlying act of direct infringement." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018). As discussed *supra* Part III.A, the FAC does not plausibly allege direct infringement by any party and, thus, the indirect infringement claims necessarily fail as well.

The indirect infringement claims also fail for an independent reason: the FAC fails to plead the requisite scienter for either induced or contributory infringement, i.e., "knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015). Stating a claim for inducement requires "plead[ing] facts plausibly showing that the accused infringer specifically intended another party to infringe the patent and knew that the other party's acts constituted infringement." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (cleaned up). Contributory infringement, likewise, requires "a showing that the alleged contributory infringer knew that the combination for which his component was especially designed was both patented and infringing." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964). Mere knowledge of the asserted patent and a direct infringer's

activities is insufficient. *Monolithic Power Sys., Inc. v. Meraki Integrated Circuit (Shenzhen) Tech., Ltd.*, No. 6:20-CV-008876-ADA, 2021 WL 3931910, at *5 (W.D. Tex. Sept. 1, 2021). This Court addresses indirect infringement in terms of pre- and post-suit conduct. *ThroughPuter, Inc. v. Amazon Web Servs., Inc.*, No. 1:25-cv-01623-DAE, Dkt. No. 40 (W.D. Tex. Aug. 11, 2026).

The FAC alleges "pre-suit knowledge of the asserted patent" based on Google patents citing the '868 Patent as prior art, FAC ¶ 38, which it conflates with knowledge of infringement: "Google had knowledge of the asserted patent since it issued, and had actual knowledge of the asserted patent *and Plaintiff's allegations of infringement* at least since the prosecution of Google's own patent applications that cite the '868 Patent as prior art." *Id.* ¶ 71 (emphasis added). Mere knowledge of the asserted patent does not impart knowledge of a plaintiff's infringement allegations. *See Monolithic*, 2021 WL 3931910 at *5. The allegations of intent to infringe are equally threadbare and devoid of facts, and do not support pre-suit indirect infringement. *See* FAC ¶ 72 (relying on purported knowledge of infringement set forth in paragraph 71).

While the FAC alleges post-suit knowledge, *see* FAC ¶ 40, such knowledge can only "support a claim for post-suit indirect infringement, it does not support a claim for pre-suit indirect infringement." *ThroughPuter*, No. 1:25-cv-01623-DAE, Dkt. No. 40 at 10; *see Etto IP*, 2023 WL 11983055, at *3 (dismissing indirect infringement claims for lack of scienter allegations). The only allegation regarding post-suit knowledge of infringement and intent to infringe is Plaintiff's June 2, 2026 delivery to Google of the original complaint—eight days before the patent expired. *See* FAC ¶ 40; *supra* Part II.A. Notwithstanding that complaints can satisfy post-suit knowledge, here the original complaint cannot do so as it was entirely

conclusory and did not explain how Google allegedly infringed or identify infringing features of google.com, as set forth in Google's July 16 Motion to Dismiss. *See* Dkt. No. 11 at 5-9.

**C. The FAC does not plausibly allege willful infringement.**

"The knowledge requirement for willful patent infringement is the same as for indirect patent infringement." *Network Sys. Techs., LLC v. Qualcomm Inc.*, No. 1:22-CV-01331, 2023 WL 11833572, at *14 (W.D. Tex. July 21, 2023). A plaintiff must plausibly allege that the accused infringer: "(1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent." *CTD Networks, LLC v. Google, LLC*, 688 F. Supp. 3d 490, 503 (W.D. Tex. 2023) (cleaned up). "Mere knowledge of the Asserted Patent[ ] is not enough." *BillJCo, LLC v. Apple Inc.*, 583 F. Supp. 3d 769, 777 (W.D. Tex. 2022). The FAC's willfulness allegations, like those for indirect infringement, rely entirely on the citation to the '868 Patent in Google's own applications (pre-suit) and June 2, 2026 delivery of the original complaint (post-suit). FAC ¶¶ 72, 74. Thus, this fails for the same reasons discussed *supra* Part III.B.

**D. The asserted claim is invalid under 35 U.S.C. § 101.**

The asserted claims are directed towards an abstract idea and are thus ineligible under 35 U.S.C. § 101. The FAC adds a handful of conclusory allegations aimed at overcoming this flaw; but none change that the asserted claims are abstract and lack any inventive concept.

**1. Legal standard**

Courts follow a two-step inquiry to determine whether patent claims are ineligible under 35 U.S.C. § 101 for claiming "abstract ideas." 35 U.S.C. § 101; *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). At step one, a court determines "whether the claims at issue are directed to" an abstract idea. *Id.* at 217. If so, then at step two the court evaluates whether there exists "an inventive concept—i.e., an element or combination of elements that is

sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 217-18 (cleaned up). Patentability under section 101 is a threshold legal issue that courts routinely address at the pleadings stage. *See, e.g.*, *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 702 (Fed. Cir. 2023); *PerformancePartners, LLC v. FlashParking, Inc.*, 697 F. Supp. 3d 678, 685 (W.D. Tex. 2023).

**2. Claim 1 is representative**

Claim 1 is representative because "all the claims are substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (cleaned up). Claim 8, the only other independent claim, mirrors claim 1, but is directed to a method, rather than a system. *See supra* Part II.A. Claim 8 does not include any limitations that distinguish it from claim 1 for purposes of the section 101 inquiry. Thus, the Court can dismiss the FAC entirely if it determines that claim 1 is ineligible. *See Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1358 n.2 (Fed. Cir. 2023) (affirming dismissal on section 101 grounds based on analysis of only asserted claims).

**3. *Alice* step one: the representative claim is directed to the abstract idea of providing related terms in an interactive GUI that allows the user to modify her search query.**

At step one of the *Alice* test, courts look at the focus of the claims to determine their "character as a whole." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (citation omitted). Typically, for computer-related inventions courts "ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea." *Sanderling*, 65 F.4th at 703 (citation omitted).

The claims here focus on the abstract idea of presenting related terms in an interactive GUI to enable search query modifications. Indeed, this is exactly how the patent describes the purported invention: "an interactive environment to define the search subject" that "helps the

user focus on the object of the search by providing a list of terms related to the search … The user is then encouraged to operate on these offered terms and his own search keywords through a user-friendly graphical user interface (GUI).” ’868 Patent at 2:39-45.

Claim 1 recites three basic functions: (1) generating related terms, (2) providing them as graphical icons in a visually manipulatable GUI; and (3) generating a modified query. But it uses entirely results-oriented language, and omits any specific means for related term generation, GUI operation, or query creation. *Id.* at 7:6-42. First, the claim provides no technical detail explaining *how* it generates the related terms. The claim is replete with high-level descriptions requiring an organized “data structure,” “data entities,” “relationships involving said related terms,” “data network analysis,” “expert knowledge,” and “statistical correlations,” *see id.* at 7:6-61, but it fails to explain how any of those things actually work. For example, the claim fails to explain how to perform “expert knowledge” analysis or what informs it. It similarly omits how to determine relationships between related terms and never defines what those relationships entail.

Second, the claim likewise provides no technical details about how to implement the claimed GUI or graphical icons. Instead, it relies on purely functional language, describing only what the GUI does for the user, i.e., provides related terms as “graphical icons,” “allows visual manipulating” of the query, and includes “a plurality of graphical operators.” *Id.* at 7:24-38.

Finally, as to the “query generator,” the claim provides no detail beyond the result that the query generator achieves, namely generating the “new refined search query” by applying the user’s visual manipulation of the GUI. *Id.* at 7:39-42.

Claim 1 is not directed to a technological improvement nor to a problem unique to computers. *See Int’l Bus. Machs. Corp. v. Zillow Grp., Inc.* (*IBM I*), 50 F.4th 1371, 1381 (Fed. Cir. 2022) (patent ineligible where “[t]he problem the [patent] purportedly solves . . . is not

specific to a computing environment"). "The concept of refining a search query" is "a problem humans have long dealt with, including before the advent of the Internet." *Collarity, Inc. v. Google Inc.*, No. 11-1103-MPT, 2015 WL 7597413, *9 (D. Del. Nov. 25, 2015). Indeed, the claims rely on ordinary human solutions. For instance, someone helping a friend find a Civic might suggest searching for Hondas, knowing Honda makes Civics and is known for reliable cars. Indeed, the patent envisions using "human subject knowledge experts" or a "professional dictionary" to assist searches. '868 Patent at 4:37-40. A human could also evaluate word frequencies, locations, and dates manually, such as through indexes or industry literature, to determine the frequency and recency of Honda recommendations and local sales. Nothing in the patent supports the idea that the claimed "data structure" that represents the "relationships involving [the] related terms" constitutes a technological improvement. Nor could it: the concept of relationships between terms exists in ordinary human activity and is not technological.

Claim 1 is "drafted in such a result-oriented way" that it amounts "to encompassing the 'principle in the abstract' no matter how implemented." *See Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1343 (Fed. Cir. 2018); *see also LookSmart Grp., Inc. v. Google, LLC*, No. 24-cv-07147-JST, 2025 WL 1785343, at *4 (N.D. Cal. June 26, 2025) (invalidating search results ranking claims that did not explain "what it means to 'examine content' or 'examine a probability,'" or "how … to calculate the content score or page weight based on these limitations"). At base, the claim is directed at the idea of collecting, analyzing, organizing, and displaying information, which the Federal Circuit and district courts have "repeatedly" found abstract. *IBM I*, 50 F.4th at 1378; *see also Collarity*, 2015 WL 7597413, at *4 (invalidating claim focused on "refining search queries (i.e., questions) by switching some words used in the query but not others"); *Software Rights Archive, LLC v. Facebook, Inc.*, 485 F. Supp. 3d 1096, 1105

(N.D. Cal. 2020) (claims that "may obtain better search results than text-based Boolean searching [did] not represent any direct improvement to computer technology.").

Claim 1's "interactive GUI" does not render the claim any less abstract. The FAC's conclusory allegations that the asserted claims were novel and contrasted "conventional search engines[']" use of "textual search queries" do not change this. FAC ¶¶ 23, 26. Courts routinely invalidate patents directed to using GUIs to improve a user's experience as abstract and not directed to a technological improvement. *See, e.g.*, *Angel Techs. Grp., LLC v. Meta Platforms, Inc.*, No. 2022-2100, 2024 WL 4212196, at *4 (Fed. Cir. Sept. 17, 2024) (claims directed to digital media storage and user interfaces); *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1092 (Fed. Cir. 2019) (GUI for electronic trading); *RingCentral, Inc. v. Dialpad, Inc.*, 372 F. Supp. 3d 988, 998 (N.D. Cal. 2019) (interface for configuring call handling rules). "[I]mproving a user's experience while using a computer application is not, without more, sufficient to render the claims directed to an improvement in computer functionality." *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020); *see also Int'l Bus. Machines Corp. v. Zillow Grp., Inc.* (*IBM II*), No. 2022-1861, 2024 WL 89642, at *2, 4 (Fed. Cir. Jan 9, 2024) (invalidating claims "directed to the abstract idea of 'more precisely tailoring the outcome of a query by guiding users . . . to make choices about specific context variables" that "do nothing more than improve a user's experience while using a computer application"). "Simply applying the already-widespread practice of using graphics" instead of a manual or text-based environment does not transform an abstract idea into patent eligible subject matter. *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1360 (Fed. Cir. 2020).

Here, the claim's GUI limitations are directed to improving the *user experience* using graphical icons and known search tools, rather than any improvement in *computer functionality*.

The FAC admits that the patent is focused on "enhanc[ing] the user experience." FAC ¶ 22; *see also* '868 Patent at Abstract ("The invention then enables the user to build complex queries combining the related terms in a visual and simple way that *facilitates the search process and saves time*."), 2:38-50 ("The invention . . . *helps the user focus* on the object of the search" and "encourage[s the user] to operate on these offered terms and his own search keywords through a *user-friendly* graphical user interface (GUI)") (emphases added). Further, the "query generator" limitation does nothing beyond generating the "new refined" query by applying the "graphical operators," "related terms," and "said visual manipulation" of the GUI. '868 Patent at 7:39-42. But the claim says nothing about how these should be applied or provide any technical way of doing so. Thus, the asserted claim is directed to an abstract idea; nothing in the patent is directed to an improvement in computer functionality.

The FAC's newly-added conclusory allegations cannot save an ineligible patent. The FAC asserts that the patent discloses a "computer-implemented architecture for constructing refined search queries through a specific, coordinated operation" and a "specific sequence of computer operations" that "automatically identifies related search terms, organizes relationships among those terms and associated data entities, presents those related terms through an interactive graphical user interface, and generates refined search queries responsive to user interaction." FAC ¶¶ 25-28. It further concludes that asserted claims "address specific improvements in computer functionality and computerized search technology through concrete technological solutions." FAC ¶ 29. These allegations merely conclude that the invention was novel and a technological solution, and then repeat claim language without identifying any technical components or improvements.

Indeed, the FAC does not explain *how* this "computer-implemented architecture" is

organized, what the purported “specific, coordinated operation” or “specific sequence of computer operations” entails, or *how* the invention purportedly “automatically identifies related search terms.” *See id.*; *see also IBM I*, 50 F.4th at 1378 (invaliding claims directed to allegedly “improved [GUI] for displaying, filtering, and interacting with geospatial data on a map and list display” that were “result-oriented, describing required functions (presenting, receiving, selecting, synchronizing), without explaining how to accomplish any of the tasks.”). Nor could it. That detail must be in the claims themselves; it is not. *AI Visualize, Inc. v. Nuance Commc’ns, Inc.*, 97 F.4th 1371, 1380 (Fed. Cir. 2024) (“Conclusory allegations or those wholly divorced from the claims or the specification cannot defeat a motion to dismiss.”) (cleaned up).

#### 4. *Alice* step two: the asserted claim lacks an inventive concept.

At step two, the question is whether the elements of claim 1, either individually or in combination, contain an inventive concept sufficient to “‘transform’ the claimed abstract idea into a patent-eligible application” of the idea. *Alice*, 573 U.S. at 217, 221 (cleaned up). The claims themselves must provide the inventive concept that adds “significantly more” beyond the abstract idea, “as opposed to something purportedly described in the specification.” *Two-Way Media Ltd. v. Comcast Cable Commc’ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017). Further, “a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not.” *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012). A patentee cannot simply invoke “already-available computers”; “[r]ather, the components must involve more than performance of well-understood, routine, conventional activities previously known to the industry.” *In re TLI Commc’ns LLC Pat. Litig.*, 823 F.3d 607, 614 (Fed. Cir. 2016) (cleaned up). The claims must describe “how those components provide a concrete solution to the problem addressed by the patent.” *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1271 (Fed. Cir. 2016).

The elements of claim 1, considered individually or as an ordered combination, contain no inventive concept. Contrary to Plaintiff's assertions that the "asserted claims recite a specific combination of computer components and operations directed to improving computerized search technology itself" (FAC ¶ 26), the claims rely on generic computer components combined in a conventional way, e.g., "computer," "data network," "graphical user interface," and "data structure." '868 Patent at 7:6-42. Courts have found such components conventional. *See, e.g.*, *Hyper Search, LLC v. Facebook, Inc.*, No. 17-1387-CFC-SRF, 2018 WL 6617143, at *9 (D. Del. Dec. 17, 2018) ("network" and "browser interface" are conventional); *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324–25 (Fed. Cir. 2016) ("'interface,' 'network,' and 'database'" are "generic computer components"); *Angel Techs.*, 2024 WL 4212196, at *5 ("providing a 'graphical user interface' to implement the abstract idea" is insufficient). The claim includes a "related terms generator" and "query generator," but these are nonce terms with no meaning other than the result they seek to achieve, i.e., generating related terms and generating a query. Likewise, the FAC does not identify the alleged "specific combination of computer components and operations;" nor does it explain what the purported "ordered combination" and "specific sequence of computer operations" entails or how it improves computer functionality. FAC ¶¶ 26-28. Instead, the FAC merely reiterates claim elements and concludes the claims were "inventive." FAC ¶ 30. The Court "need not accept a patent owner's conclusory allegations of inventiveness;" *IBM I*, 50 F.4th at 1379. "Only plausible and specific factual allegations that aspects of the claims are inventive are sufficient." *Id.* (cleaned up).

The patent admits "operators" and "optimal search method[s]" existed but simply were "not exploited by most users"; thus, at most it merely surfaces to the users, in a GUI, existing and conventional search methods. '868 Patent at 2:49, 3:35-36. The patent likewise does not

disclose any novel data structure and instead merely claims the result it seeks to achieve, i.e., an "organized" "data structure" based on at least one input (data network analysis or expert knowledge), rather than any concrete solution to the problem of data structure organization. *See id.* at 4:54-56 (referring generally to "building an indexed database" without explaining, *inter alia*, how to perform any "indexing"). Indeed, the patent does not even purport to identify any problem with how existing data structures related to search engines are organized.

Further, the elements merely recite conventional steps of generating related terms, organizing them in a generic data structure, presenting them via a visually manipulatable GUI, and generating a new search query. Courts routinely find such steps ineligible. *See, e.g.*, *Content Extraction*, 776 F.3d at 1347-48 (invalidating claims reciting "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data").

The same result is warranted here. When the abstract idea is removed from the asserted claims, there is no "inventive concept" that ensures the patent amounts to "significantly more than a patent upon the ineligible concept itself." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) (cleaned up). Accordingly, the asserted claims are ineligible.

## IV. CONCLUSION

The FAC demonstrates that further amendment would be futile. First, Plaintiff cannot plausibly allege that Google Search meets each element of the asserted claims because the accused functionality does not do what the claims require. Second, Plaintiff cannot cure the asserted claims' ineligibility under section 101. *See Network Architecture Innovations LLC v. CC Network Inc.*, No. 2:16-CV-00914-JRG, 2017 WL 1398276, at *7 (E.D. Tex. Apr. 18, 2017) (dismissing complaint with prejudice under section 101). Therefore, Google respectfully requests that the Court dismiss the FAC with prejudice.

Dated: September 3, 2026

Respectfully submitted,
**JACKSON WALKER LLP**

By: */s/ Paige Welch*

Nathaniel St. Clair, II (SBN 24071564)
nstclair@jw.com
Paige Welch (SBN 24138184)
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Tel: (214) 953-6000

Asim M. Bhansali (SBN 90001290)
abhansali@kblfirm.com
Scott W. Taylor (CA SBN 318941) (*admitted pro hac vice*)
staylor@kblfirm.com
Elizabeth H. Dinh (CA SBN 329295) (*admitted pro hac vice*)
edinh@kblfirm.com
**KWUN BHANSALI LAZARUS LLP**
555 Montgomery Street, Suite 750
San Francisco, CA 94111
Tel: (415) 630-2350

*Attorneys for Defendant Google LLC*

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, the undersigned certifies that on September 3, 2026, the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system, which will serve a copy of this document on all counsel of record who have consented to electronic service through the Court's CM/ECF system.

*/s/ Paige Welch*
Paige Welch