**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

| | |
|---|---|
| AMIR LAVI,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Civil Action No. 1:26-cv-00949 |

**DEFENDANT GOOGLE LLC'S MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. §1404(a)**

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 2

A. The asserted patent claims cover a user-friendly graphical user interface for generating a search query ........ 2

B. The asserted claim and allegations against Google. ........ 3

C. Plaintiff lacks any connection to WDTX. ........ 4

D. The witnesses and documents regarding the accused functionality are in NDCA, and no witnesses are in WDTX. ........ 4

E. A relevant third-party witness is in NDCA, while there are no relevant third-party witnesses in WDTX. ........ 6

III. LEGAL STANDARD ........ 6

IV. ARGUMENT ........ 7

A. This case could have been brought in NDCA. ........ 7

B. The private interest factors favor transfer to NDCA. ........ 8

1. The most important factor—convenience of witnesses—strongly favors transfer. ........ 8

2. The ease of access to sources of proof favors transfer. ........ 11

3. The availability of compulsory process favors transfer. ........ 12

4. There are no practical problems that counsel against transfer. ........ 13

C. The public interest factors favor transfer to NDCA. ........ 14

1. NDCA's local interest favors transfer. ........ 14

2. Administrative difficulty flowing from court congestion is neutral. ........ 16

3. The familiarity with the governing law and the avoidance of unnecessary problems of conflict of laws factors are both neutral. .............................. 17

V. CONCLUSION ............................................................................................ 17

VI. CERTIFICATE OF CONFERENCE .................................................................. 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*DH Int'l Ltd. v. Apple Inc.*,
No. 1:23-CV-1114-DII, 2024 WL 4119374, at *6 (W.D. Tex. Aug. 30, 2024) ....................... 15

*Dodots Licensing Sols. LLC v. Apple Inc.*,
W-22-CV-00533-ADA, 2023 WL 4980561, at *11 (W.D. Tex. Aug. 3, 2023) ....................... 14

*Fintiv, Inc. v. Apple Inc.*,
No. 6:18-cv-00372-ADA, 2019 WL 4743678, at *5 (W.D. Tex. Sept. 13, 2019).................... 12

*Headwater Research LLC v. Google LLC*,
No. 7:25-CV-00380-DC-DTG, Dkt. No. 79 at 7 (W.D. Tex. July 8, 2026) ............................ 10

*In re Apple Inc.*,
979 F.3d 1332, 1340 (Fed. Cir. 2020)........................................................................ 11, 14

*In re Apple Inc.*,
No. 2021-181, 2021 WL 5291804, at *4 (Fed. Cir. Nov. 15, 2021)........................................ 16

*In re Apple, Inc.*,
581 F. App'x 886, 889 (Fed. Cir. 2014)........................................................................ 13

*In re Genentech, Inc.*,
566 F.3d 1338, 1345 (Fed. Cir. 2009)........................................................................ 11, 16

*In re Google LLC* ("*Google-Express*"),
No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021)........................................ 12

*In re Google LLC* ("*Google-Jawbone*"),
58 F.4th 1379, 1383-84 (Fed Cir. 2023) ........................................................................ 11

*In re Google LLC* ("*Google-Jenam*"),
No. 2021-171, 2021 WL 4592280, at *7 (Fed. Cir. Oct. 6, 2021)........................................... 11

*In re Google LLC* ("*Google-Sonos*"),
No. 2021-170, 2021 WL 4427899, at *5 (Fed. Cir. Sept. 27, 2021).............................. 9, 11, 15

*In re Hoffman-La Roche Inc.*,
587 F.3d 1333, 1338 (Fed. Cir. 2009)........................................................................ 15

*In re Hulu, LLC*,
No. 2021-142, 2021 WL 3278194, at *5 (Fed. Cir. Aug. 2, 2021)............................................ 8

*In re Juniper Networks, Inc.*,
14 F.4th 1313, 1323 (Fed. Cir. 2021) ........ 7, 8, 13, 16

*In re Microsoft Corp.*,
No. 2023-128, 2023 WL 3861078, at *1 (Fed. Cir. June 7, 2023) ........ 7

*In re Planned Parenthood Fed'n of Am., Inc.*,
52 F.4th 625, 629 (5th Cir. 2022) ........ 7, 13

*In re TikTok, Inc.*,
85 F.4th 352, 366 (5th Cir. 2023) ........ 7

*In re TS Tech USA Corp.*,
551 F.3d 1315, 1319 (Fed. Cir. 2008) ........ 6

*In re Volkswagen of Am., Inc.*,
545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*") ........ 6, 7, 8, 9, 12, 13

*L2 Mobile Techs. LLC v. Google LLC*,
No. 6:21-cv-00358-ADA, Dkt. No. 52 at 7 (W.D. Tex. Dec. 29, 2021) ........ 12

*Longitude Licensing Ltd. v. Qualcomm Inc.*,
No. 1:25-cv-01629-RP, Dkt. No. 90 at 9 (W.D. Tex. July 23, 2026) ........ 10

*Parus Holdings Inc. v. LG Elecs. Inc.*,
No. 6:19-CV-00432-ADA, 2020 WL 4905809, at *6–7 (W.D. Tex. Aug. 20, 2020) ........ 13

*Polaris Innovations Ltd. v. Dell, Inc.*,
No. SA-16-CV-451-XR, 2016 WL 7077069, at *11 (W.D. Tex. Dec. 5, 2016) ........ 14

*Relink US LLC v. Tesla, Inc.*,
No. 1:23-cv-1093-DAE, 2025 WL 2123783, at *7 (W.D. Tex. Apr. 3, 2025) ........ 16, 17

*Super Interconnect Techs. v. Google LLC*,
No. 6:21-CV-00259-ADA, 2021 WL 6015465, at *5 (W.D. Tex. Nov. 8, 2021) ........ 13

*Vassallo v. Goodman Networks, Inc.*,
No. 5:14-CV-743-DAE, 2015 WL 502313, at *4 (W.D. Tex. Feb. 5, 2015) ........ 14, 15

*WirelessWerx IP, LLC v. Google, LLC*,
No. 6:22-CV-1056-RP, 2023 WL 11921792, at *4 (W.D. Tex. Apr. 14, 2023) ........ 11, 14, 15

*XR Commc'ns*, *LLC v. Google LLC*,
No. 6:21-cv-00625-ADA, 2022 WL 3702271, at *9 (W.D. Tex. Aug. 26, 2022) ........ 16

*XY, LLC v. Trans Ova Genetics, LC*,
No. W-16-CA-00447-RP, 2017 WL 5505340, at *9 (W.D. Tex. Apr. 5, 2017) ........ 14

**Statutes**

28 U.S.C. § 1400 .......... 7, 8

28 U.S.C. § 1404 .......... 1, 6

35 U.S.C. § 101 .......... 1

**Rules**

Fed. R. Civ. P. 45 .......... 12

## I. INTRODUCTION

Defendant Google LLC ("Google") respectfully requests that the Court transfer this action from the Western District of Texas ("WDTX") to the Northern District of California ("NDCA") pursuant to 28 U.S.C. § 1404(a). As a threshold matter, this action should never have been filed in any venue: as explained in Google's concurrently filed Motion to Dismiss (Dkt. No. 24), Plaintiff Amir Lavi's First Amended Complaint ("FAC") is wholly inadequate under the *Iqbal*/*Twombly* pleading standard and the asserted patent is ineligible under 35 U.S.C. § 101. Those fatal flaws aside, the relevant factors under section 1404(a) compel transfer to NDCA because this case could have been brought there and it is clearly the more convenient venue.

The majority of potentially relevant witnesses and sources of proof regarding the accused functionality are located in NDCA, where Google is headquartered. Although the FAC names "Google Search" as an accused product, the functionality accused in the FAC is much narrower: the query refinement options on the "Images" tab for Google Search (known as "Images chip").[1] Although Plaintiff peppers the FAC with references to different aspects of Google technology in an undisguised attempt to tie this case to WDTX, the FAC does not allege any ties between WDTX and the functionality it actually accuses of infringement. That is unsurprising given that the Google engineers responsible for the accused functionality are located in NDCA—not WDTX. The Google employees responsible for the design, development, and maintenance of the accused Images chip functionality are based out of offices in NDCA. Likewise, the relevant documents are created and maintained primarily in NDCA. Google has also identified a potential

[1] Google's description of the accused functionality for purposes of this Motion is based on the FAC's allegations, and in no way suggests that such functionality is properly accused. To the contrary, Google's concurrently filed Rule 12(b)(6) Motion to Dismiss explains why the allegations are insufficient to state a claim.

third-party witness in NDCA. Further, NDCA has a stronger local interest in this dispute given that Google is headquartered there, and the Images chip functionality was designed, developed and is currently maintained in NDCA.

In contrast, this case has no meaningful connection to WDTX. Plaintiff—the only named inventor of the patent-in-suit—does not live or work in WDTX. Moreover, despite the FAC's repeated references to Google's office in Austin, Texas, none of the alleged activities taking place in that office has any relevance to the asserted claims. Indeed, Google is not aware of any employees in WDTX related to the design, development, testing, or current operation of the accused Images chip functionality. Nor is Google aware of any third-party witnesses located in WDTX.

Accordingly, Google respectfully requests that the Court transfer this case to NDCA.

## II. STATEMENT OF FACTS

### A. The asserted patent claims cover a user-friendly graphical user interface for generating a search query.

The FAC alleges that Google infringes the '868 Patent, entitled "System For Facilitating Search Over a Network," which issued on December 6, 2011, and purports to "facilitate[] the search process by suggesting relevant search keywords to the user" and enable "the creation of a detailed and precise search query" via "a user-friendly graphical user interface (GUI)." '868 Patent at 1:15-20; 2:43-46. As described in more detail in Google's Motion to Dismiss (Dkt. No. 24), the asserted claims purport to cover a GUI that provides related terms to users as "graphical icons" such that the user can "operate on these offered terms and his own search keywords through a user-friendly graphical user interface (GUI) and thus filter his search." *Id.* at 2:36-46.

### B. The asserted claim and allegations against Google.

The FAC alleges that Google infringes claim 1 and claim 8 of the '868 Patent. Dkt. No. 21 ("FAC") ¶ 52. Claim 1 discloses a system that provides related terms to the user in the form of graphical icons in an interactive UI, allows the user to modify their search query by "visual manipulation" of those icons "in a plurality of graphical operators," and then generates a "new refined search query by applying said plurality of graphical operators on said one or more of related terms" in response to the user's "visual manipulation." '868 Patent" at 7:6-42. Claim 8 is a method claim that discloses steps "for generating search queries using visual manipulation of search terms to facilitate a search process over a data network." *Id.* at 7:65-8:35. The claims end with the generation of a modified query; they do not purport to cover generating any search results in response to the user's query (neither the initial query nor the modified query).

The FAC does not include a claim chart, but includes cropped screenshots from the Images tab of google.com depicting Images chips. For example:




*see id.* ¶¶ 54, 56, 60-62, 64-66, 69 (depicting screenshots and portions of screenshots of the display and operation of Images chips). All of the screenshots included in the FAC show the display, selection, and operation of these Image chips. No other functionality on Google Search is described, depicted, or accused in the FAC's infringement allegations. *See generally* FAC at Count One "Infringement of U.S. Patent No. 8,073,868," ¶¶ 54-70.

The FAC includes multiple conclusory references to Google's Texas-based operations. *See id.* ¶¶ 4-11. For example, the FAC alleges, without citation to any facts, that Google's

"Austin-based employees are directly involved in the design, implementation, testing, deployment, monetization, and support of Google's accused applications and systems, including technologies that embody the infringing functionality." *Id.* The FAC similarly pleads on "information and belief" that "Google's Austin operations" include employees "with direct knowledge of the accused systems." *Id.* Further, the FAC includes multiple references to alleged, wide-ranging Austin-based artificial intelligence ("AI") and machine-learning ("ML") operations. *See id.* ¶¶ 4, 5, 8, 10, 11. But, as discussed *infra*, Parts IV.B.1, IV.C.1, the FAC does not plead any facts tying Google's Texas-based operations or employees to the accused Images chip functionality.

### C. Plaintiff lacks any connection to WDTX.

Plaintiff is an individual, domiciled in Tel Aviv, Israel. FAC ¶ 2. He is the sole inventor listed on '868 Patent. '868 Patent at 1. There are no allegations that Plaintiff lives or works in WDTX or otherwise has any connection to this District. *See generally* FAC.

### D. The witnesses and documents regarding the accused functionality are in NDCA, and no witnesses are in WDTX.

Google is headquartered in NDCA, and that is where accused functionality was developed. Declaration of Bradley Kellett ("Kellett Decl.") ¶ 3. The Google employees responsible for the accused Images chip are:

- **Bradley Kellett** is a Senior Director at Google and leads the Video and Images Experience team. This team is responsible for the user's experience when searching for and receiving search results for Images or Videos on Google Search. Members of Mr. Kellett's team are responsible for design and development of the Images chip, including both the frontend (i.e., the user interface components) and backend (i.e., generation of) functionality. Kellett Decl. ¶¶ 2-7. Mr. Kellett is based out of Google's office in

Mountain View, California, where Google is headquartered. *Id.* ¶ 3. The Google employees responsible for the Images chip on Mr. Kellett's team are likewise based in NDCA:

- **Addy Ngan:** Mr. Ngan is a Director, Software Engineering. Mr. Ngan is based out of Google's office in Mountain View, and he manages the team responsible for generating the Images chip. *Id.* ¶ 5.
- **Suddha Basu:** Mr. Basu is a Software Engineer who works on the Images chip and reports to Mr. Ngan, and he is based out of Google's office in Mountain View. *Id.*
- **Yonghong Zhang:** Ms. Zhang is a Software Engineer who works on the Images chip and reports to Mr. Ngan, and she is based out of Google's office in Mountain View *Id.*
- **Amay Champaneria:** Mr. Champaneria is a Software Engineer who is responsible for the user interface for the Images chip, i.e., how they look to the user and how the user can interact with them. He is based out of Google's office in Mountain View. *Id.* ¶ 6.

No Google employees responsible for the design, development, testing, or current operation of the accused functionality are based in WDTX. Indeed, although the FAC alleges—without citation to any facts—that Google's Austin office is "a central site of relevant witnesses and evidence," *see* FAC ¶ 9, Google is not aware of any employees in Texas who who have relevant knowledge of the design, development, testing, or maintenance of the accused Images chip functionality. Kellett Decl. ¶ 8.

### E. A relevant third-party witness is in NDCA, while there are no relevant third-party witnesses in WDTX.

A relevant third-party witness regarding prior art is located in NDCA. The inventor of a system called Grokker, Jean-Michel Decombe, appears to be located in NDCA as of September 2, 2026. Declaration of Scott W. Taylor ("Taylor Decl.") ¶ 3, Exs. 1 & 2. Grokker was a prior art system (available no later than 2002) developed by Mr. Decombe for a San Francisco (NDCA)-based company called Groxis, Inc., where he was the Chief Technical Officer. *Id.*, Ex. 3. Grokker presented terms related to a query in a graphical interface that the user could manipulate. *Id.*, Ex. 4. Mr. Decombe is also an inventor on several U.S. patents apparently related to his work on Grokker. *Id.*, Exs. 5-7. Google is not aware of any third parties in Texas who have relevant knowledge of the accused functionality or the '868 Patent. As previously noted, Plaintiff is the sole inventor of the '868 Patent, and he has no connection to WDTX other than this suit. *See* FAC ¶ 2.

## III. LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit—here, the Fifth Circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). To evaluate transfer under § 1404(a), courts first consider "whether a civil action 'might have been brought' in the destination venue." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). If so, courts then weigh public and private interest factors to determine the convenience of the venue. *Id.*

Courts consider the following private interest factors: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. at 315. The public interest factors are: "(1)

the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [of] the application of foreign law." *Id*.

"The Fifth Circuit has made clear that while the decision of whether to transfer a case is committed to the district court's discretion, *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 629 (5th Cir. 2022), the district court should transfer when a movant demonstrates that the transferee [forum] is clearly more convenient, *Volkswagen II,* 545 F.3d at 315." *In re Microsoft Corp.*, No. 2023-128, 2023 WL 3861078, at *1 (Fed. Cir. June 7, 2023) (internal quotation marks omitted). Thus, if the majority of the witnesses and evidence are closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the court should grant a motion to transfer. *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1323 (Fed. Cir. 2021); *see also In re TikTok, Inc.*, 85 F.4th 352, 366 (5th Cir. 2023) (finding NDCA "a clearly more convenient venue" where WDTX "contains no relevant evidence, is thousands of miles away from the vast majority of relevant witnesses, and is wholly unconnected to the underlying dispute").

## IV. ARGUMENT

The relevant factors show that transfer is warranted because the case could have been brought in NDCA, which is also clearly the more convenient forum.

### A. This case could have been brought in NDCA.

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Volkswagen II*, 545 F.3d at 312. Here, this action could have been brought in NDCA because it is undisputed that Google is headquartered in Mountain View, California, which is in that district. FAC ¶ 3; 28 U.S.C. § 1400(b) ("Any civil action for patent

infringement may be brought in the judicial district where the defendant resides . . . ."). Further, the accused functionality was designed and developed and is currently maintained in NDCA. *See supra* Part II.D; 28 U.S.C. § 1400(b).

**B. The private interest factors favor transfer to NDCA.**

**1. The most important factor—convenience of witnesses—strongly favors transfer.**

"The relative convenience for and cost of attendance of witnesses between the two forums is 'probably the single most important factor in transfer analysis.'" *In re Juniper Networks*, 14 F.4th at 1318 (citation omitted). Under the Fifth Circuit's "100–mile rule," when the current venue and the proposed venue are more than 100 miles apart, "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen II*, 545 F.3d at 317 (citation omitted). This is because "[a]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Id*. The convenience to the witness does not become less important if a witness is the employee of a party and thus could be compelled to testify. *In re Juniper Networks*, 14 F.4th at 1319 ("We have previously rejected the district court's reliance on the proposition that the convenience-to-the-witnesses factor is attenuated when the witnesses are employees of the party calling them.") (citing *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *5 (Fed. Cir. Aug. 2, 2021)).

Here, NDCA is clearly more convenient for potential witnesses. Google has identified five current employees in NDCA—Messrs. Kellett, Ngan, Basu, Zhang, and Champaneria—with the most relevant knowledge regarding the accused functionality. *See supra* Section II.D; Kellett Decl. ¶¶ 3-7. Further, Google has identified a third-party witness with potentially relevant

knowledge regarding a prior art system that was initially developed and maintained in NDCA. *See supra* Section II.E; Taylor Decl. ¶ 3, Exs. 1-4. That witness appears to reside in NDCA. *Id.*

On the other hand, Google is unaware of any witnesses in WDTX who were involved in the design, development, testing, or current operation of the accused functionality. *See* Kellett Decl. ¶ 8. It "is an 'obvious conclusion' that it is more convenient for witnesses to testify at home" than a forum hundreds of miles away. *Volkswagen II*, 545 F.3d at 317. Were this case to proceed in WDTX, the witnesses based in NDCA would have to spend several hours traveling to testify and "not only suffer monetary costs, but also the personal costs associated with being away from work, family, and community." *See id.*

Although the FAC attempts to tie the case to WDTX, it includes only broad, conclusory references to "Google's Austin workforce," *see* FAC ¶¶ 8, 11, without any explanation of how such employees are relevant to the accused Images chip functionality. Such conclusory allegations do not weigh against transfer. Indeed, courts have found that even where a plaintiff "listed a large number of potential witnesses from Google's Austin campus," it did not weigh against transfer because the plaintiff "did not indicate with specificity what relevant evidence any of those witnesses would have to offer." *In re Google LLC* ("*Google-Sonos*"), No. 2021-170, 2021 WL 4427899, at *5 (Fed. Cir. Sept. 27, 2021). Here, there is no such list of Google employees, much less a "large number," nor do the allegations suggest that "Google's Austin workforce" has relevant information. To the contrary, the FAC broadly references alleged Austin-based artificial intelligence ("AI") and machine-learning ("ML") operations that are facially irrelevant to the asserted patent. FAC ¶ 10. That there may be Google engineers working on "AI and ML techniques to classify, rank, and present ***search results*,**" as the FAC alleges, is wholly irrelevant to the purported invention of the asserted patent, which concerns generating

*search queries*. *Compare* FAC ¶ 10 ("AI and ML techniques to classify, rank, and present *search results*") (emphasis added) *with* '868 Patent at 7:6-8 ("A system for *generating search queries* . . . comprising") and *id.* at 7:65-67 ("A computer implemented method for *generating search queries* . . . comprising") (emphases added). Simply put, technology for and employees working on functionality related to "classify[ing], rank[ing], and present[ing], ***search results***" have no relevance to patent claims that expressly cover only "generating search queries."

The remaining references to Google's Austin-based "AI and ML" operations are so broad as to cover virtually any role. S*ee* FAC ¶ 11 ("Google regularly staffs AI- and ML-related roles in the Austin area, including positions requiring expertise in machine learning, data analysis, AI-enabled cloud platforms, and consumer experience" that are "directly relevant to the accused system"). Similarly, the FAC broadly alleges that "Google employees test and demo Google Search on Defendant's own machines (including those in Austin, Texas)," but pleads no *facts* tying any such work to the Images chip functionality. *See id.* ¶¶ 54, 60. Indeed, Google is not aware of any witnesses located in WDTX that are responsible for the development, testing, or current operation of the accused Images chip functionality. Kellett Decl. ¶ 8. Thus, Google's Austin-based operations do not weigh in favor of maintaining this action in WDTX. *See Headwater Research LLC v. Google LLC*, No. 7:25-CV-00380-DC-DTG, Dkt. No. 79 at 7 (W.D. Tex. July 8, 2026) ("Although [Google] has an Austin office, no employees responsible for the design and development of the accused technology are based there."); *see also Longitude Licensing Ltd. v. Qualcomm Inc.*, No. 1:25-cv-01629-RP, Dkt. No. 90 at 9 (W.D. Tex. July 23, 2026) (finding presence of defendant's Austin office did not weigh against transfer where the majority of defendant's employees "who designed and developed the allegedly infringing

technology" were located elsewhere). Likewise, Plaintiff, a likely witness, does not reside or work in Texas. FAC ¶ 2.

In summary, because the witnesses actually identified are almost entirely in NDCA and none are in WDTX, this factor strongly supports transfer. *See, e.g.*, *In re Google LLC* ("*Google-Jawbone*"), 58 F.4th 1379, 1383-84 (Fed Cir. 2023) (finding convenience of witnesses weighed "firmly" in favor of transfer where Google identified "employees in [NDCA] who were part of the product and engineering teams with technical knowledge of the accused functionality," as well as "several third-party witnesses" in NDCA); *Google-Sonos*, 2021 WL 4427899, at *4 ("[W]hen there are numerous witnesses in the transferee venue and the only other witnesses are far outside the plaintiff's chosen forum, the witness-convenience factor favors transfer."); *see also WirelessWerx IP, LLC v. Google, LLC*, No. 6:22-CV-1056-RP, 2023 WL 11921792, at *4 (W.D. Tex. Apr. 14, 2023) ("Because the relevant witnesses are almost entirely located in California, especially within the Northern District, this 'most important factor' weighs strongly in Google's favor.").

**2. The ease of access to sources of proof favors transfer.**

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). "[W]hile electronic storage of documents makes them more widely accessible than was true in the past, the fact that documents can often be accessed remotely does not render the sources-of-proof factor irrelevant." *In re Google LLC* ("*Google-Jenam*"), No. 2021-171, 2021 WL 4592280, at *7 (Fed. Cir. Oct. 6, 2021). Indeed, "the location of document custodians and [the] location where documents are

created and maintained . . . may bear on the ease of retrieval." *In re Google LLC* ("*Google-Express*"), No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021).

As noted *supra* Section II.D, the Google engineers with knowledge of the accused functionality are based in NDCA. Kellett Decl. ¶¶ 2-7. As a result, Google's documentation regarding the accused functionality was created and is primarily maintained in NDCA. *Id.* ¶ 9. Thus, this factor strongly favors transfer. *See L2 Mobile Techs. LLC v. Google LLC*, No. 6:21-cv-00358-ADA, Dkt. No. 52 at 7 (W.D. Tex. Dec. 29, 2021) ("[T]his Court will follow the Federal Circuit's lead and weigh the evidence created and maintained by NDCA-based Google personnel in favor of transfer."); *see also Google-Express*, 2021 WL 5292267, at *2 (noting that "location of document custodians and location where documents are created and maintained . . . bear on the ease of retrieval," and favor transfer). Likewise, Google has identified a relevant prior art system that was developed in and/or is currently maintained in NDCA. *See supra* Section II.E. Thus, sources of proof regarding that prior art system are likely located in NDCA as well.

**3. The availability of compulsory process favors transfer.**

This factor focuses on "non-party witnesses whose attendance may need to be secured by a court order." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-cv-00372-ADA, 2019 WL 4743678, at *5 (W.D. Tex. Sept. 13, 2019) (citing *Volkswagen II*, 545 F.3d at 316). Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person" or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B). The availability of compulsory process "receives less weight when it has not

been alleged or shown that any witness would be unwilling to testify," *see Planned Parenthood*, 52 F.4th at 630-31, but "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *Super Interconnect Techs. v. Google LLC*, No. 6:21-CV-00259-ADA, 2021 WL 6015465, at *5 (W.D. Tex. Nov. 8, 2021) (citations omitted).

As noted above, Google has identified a potential third-party witness located in NDCA. *See supra* Section II.E. Google is not presently aware of any third-party witnesses in WDTX and Plaintiff has identified none. *Id.* As a potentially relevant third-party witness is in NDCA and none are located in WDTX, this factor favors transfer. *See, e.g., In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014) (noting this "factor will weigh heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue."); *WirelessWerx*, 2023 WL 11921792, at *3 (finding this factor "weighs in favor of transfer" where NDCA had subpoena power over more witnesses than WDTX); *see also In re Juniper*, 14 F.4th at 1319 (noting that location of prior art witnesses is relevant to the transfer analysis).

**4. There are no practical problems that counsel against transfer.**

When considering the private interest factors, courts must also consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. Here, there are no practical problems that would counsel against transfer to NDCA. This case is in its early stages; no scheduling orders have been issued nor discovery served at the time of this filing. Thus, transfer would not cause any substantial delay. *See, e.g.*, *Parus Holdings Inc. v. LG Elecs. Inc.*, No. 6:19-CV-00432-ADA, 2020 WL 4905809, at *6–7 (W.D. Tex. Aug. 20, 2020) ("[T]his case is in its early stages, meaning any increase in judicial economy from the Court's experience in these early stages of litigation is likely to be limited.");

*Vassallo v. Goodman Networks, Inc.*, No. 5:14-CV-743-DAE, 2015 WL 502313, at *4 (W.D. Tex. Feb. 5, 2015) (finding no substantial delay where case was in early stage of litigation "prior to the issuance of a scheduling order or discovery").

Accordingly, the private interest factors favor transfer to NDCA.

### C. The public interest factors favor transfer to NDCA.

#### 1. NDCA's local interest favors transfer.

The first public interest factor considers the "local interest" in the dispute and evaluates "significant connections between a particular venue and *the events that gave rise to a suit*." *In re Apple Inc.*, 979 F.3d at 1345. "Courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence." *Dodots Licensing Sols. LLC v. Apple Inc.*, W-22-CV-00533-ADA, 2023 WL 4980561, at *11 (W.D. Tex. Aug. 3, 2023). Conversely, "headquarters in a certain location gives that location a strong local interest." *Polaris Innovations Ltd. v. Dell, Inc.*, No. SA-16-CV-451-XR, 2016 WL 7077069, at *11 (W.D. Tex. Dec. 5, 2016); *see also XY, LLC v. Trans Ova Genetics, LC*, No. W-16-CA-00447-RP, 2017 WL 5505340, at *9 (W.D. Tex. Apr. 5, 2017) ("The district where a party has its principal place of business typically has a stronger local interest in the adjudication of the case.").

NDCA has a strong local interest in this case. First, Google is headquartered in NDCA. FAC ¶ 3; Kellett Decl. ¶ 3. Thus, "courts in this district have found that [NDCA] has a greater local interest in cases involving Google than [WDTX]." *See WirelessWerx*, 2023 WL 11921792, at *5 (noting that "[w]hile Google has an office in Austin, its headquarters is located in [NDCA]" and "courts in this district have found that [NDCA] has a greater local interest in cases involving Google than [WDTX]"). Second, the accused Images chip functionality was initially developed in NDCA—as was Google Search itself—and maintenance of the accused

functionality is focused in NDCA; thus, that is where the potentially relevant witnesses and documentation are located. Kellett Decl. ¶¶ 2-7, 9.

In contrast, there is no connection between WDTX and the events giving rise to this case. Despite the FAC's broad, conclusory references to "Google's Austin workforce" and "substantial operations in Austin," FAC ¶¶ 11, 15, there are no employees in that office involved in the design, development, testing, or current operation of the accused functionality and the relevant documentation was not created or maintained there. Kellett Decl. ¶¶ 8, 9. Thus, the mere presence of a Google office in WDTX "has little weight in the absence of any indication" that relevant activities, witnesses, or sources of proof are located here. *See Vassallo*, 2015 WL 502313, at *5 (finding local interest factor weighed in favor of transfer despite defendant's office in WDTX); *see also WirelessWerx*, 2023 WL 11921792, at *5. The FAC's conclusory assertion that "millions of infringing acts occur in [WDTX] every day" based on "one of the highest Google search activity levels in the country" does not counsel a different result. *See* FAC ¶ 12. Indeed, the sale or use of an accused product that is available nationwide does not establish a local interest "in any single venue." *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). Further, Plaintiff "has no meaningful connection" to WDTX "other than having chosen to file suit in this forum"; that connection alone does not outweigh NDCA's substantial local interest in this matter. *See DH Int'l Ltd. v. Apple Inc.*, No. 1:23-CV-1114-DII, 2024 WL 4119374, at *6 (W.D. Tex. Aug. 30, 2024) (finding local interest factor "weigh[ed] strongly in favor of transfer" under similar circumstances).

In sum, the "local interest factor should [be] weighted strongly in favor of transfer" because "the accused products were designed and developed in the transferee venue and are not related to Google's presence in Texas." *Google-Sonos*, 2021 WL 4427899, at *6.

2. **Administrative difficulty flowing from court congestion is neutral.**

The "court congestion" factor considers whether there is "an appreciable difference in the degree of docket congestion between the two forums." *In re Juniper Networks*, 14 F.4th at 1322. This factor is given the least weight, however, because it is the "most speculative." *XR Commc'ns*, *LLC v. Google LLC*, No. 6:21-cv-00625-ADA, 2022 WL 3702271, at *9 (W.D. Tex. Aug. 26, 2022) (citing *In re Genentech,* 566 F.3d at 1347); *see also Relink US LLC v. Tesla, Inc.*, No. 1:23-cv-1093-DAE, 2025 WL 2123783, at *7 (W.D. Tex. Apr. 3, 2025) (noting that "[a] court's assessment of another's docket is inherently speculative"). Thus, where "several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347. Indeed, "[a] Section 1404(a) transfer cannot be granted solely based on court congestion." *Relink*, 2025 WL 2123783, at *7.

Here, this factor is at most neutral. According to the most recent statistics, WDTX has 991 pending cases per judge, while NDCA has 1382 such cases, and the median time to trial in WDTX is 30.3 months compared to 29.9 months in NDCA.[2] Thus, this case could conceivably proceed to trial faster in NDCA than WDTX. As this Court has recognized, however, any such temporal advantage is too speculative to meaningfully alter the transfer analysis. *See Relink*, 2025 WL 2123783, at *7 (addressing court congestion in NDCA compared to WDTX and declining "to make any speculations about the docket of [NDCA] compared to its own docket"); *see also In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *4 (Fed. Cir. Nov. 15, 2021) (quoting *In re Juniper Networks*, 14 F.4th at 1322) ("not[ing] that 'the Western District of Texas

---

[2] *See* https://www.uscourts.gov/sites/default/files/document/fcms_na_distcomparison0630.2026.pdf (last visited Sept. 1, 2026).

and the Northern District of California show no significant differences in caseload or time-to-trial statistics.'"). Thus, "this factor is neutral." *Relink*, 2025 WL 2123783, at *7.

### 3. The familiarity with the governing law and the avoidance of unnecessary problems of conflict of laws factors are both neutral.

The final two factors—familiarity with the law and avoidance of problems of conflicts of law or application of foreign law—are neutral. Both forums are familiar with patent law, and there are no conflict-of-law issues. *See id.* (granting transfer from WDTX to NDCA and finding both the familiarity with governing law and conflict of laws factors neutral).

***

On balance, the private and public interest factors favor transfer to NDCA. Three of the four private interest factors (i.e., convenience of the witnesses, ease of access to sources of proof, and availability of compulsory process) weigh strongly in favor of transfer and the remaining private interest factor (practical problems) is neutral. Of the four public interest factors, the local interest weighs strongly in favor of transfer and the remaining factors are neutral.

## V. CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court transfer this action to the Northern District of California under section 1404(a).

## VI. CERTIFICATE OF CONFERENCE

To conserve the Court's and the parties' resources, including by avoiding unnecessary motion practice, Google's counsel met and conferred with Plaintiff's counsel on September 2, 2026 in a good-faith attempt to resolve this matter. The parties could not reach an agreement.

Respectfully submitted,

**JACKSON WALKER LLP**

Dated: September 3, 2026

By: */s/ Paige Welch*

Nathaniel St. Clair, II (SBN 24071564)
nstclair@jw.com
Paige Welch (SBN 24138184)
pwelch@jw.com
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Tel: (214) 953-6000

Asim M. Bhansali (SBN 90001290)
abhansali@kblfirm.com
Scott W. Taylor (CA SBN 318941) (admitted *pro hac vice*)
staylor@kblfirm.com
Elizabeth H. Dinh (CA SBN 329295) (admitted *pro hac vice*)
edinh@kblfirm.com
**KWUN BHANSALI LAZARUS LLP**
555 Montgomery Street, Suite 750
San Francisco, CA 94111
Tel: (415) 630-2350

*Attorneys for Defendant Google LLC*

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, the undersigned certifies that on September 3, 2026, the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system, which will serve a copy of this document on all counsel of record who have consented to electronic service through the Court's CM/ECF system.

*/s/ Paige Welch*
Paige Welch