**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| AMIR LAVI,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Civil Action No. 1:26-cv-00949-DAE<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF AMIR LAVI'S RESPONSE IN OPPOSITION TO DEFENDANT GOOGLE LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT....1

LEGAL STANDARDS....1

I. Sufficiency of the Pleadings....3

II. Patentability Under 35 U.S.C. § 101....4

ARGUMENT....7

I. Plaintiff Sufficiently Pleads Patent Infringement....7

A. Plaintiff's Direct Infringement Claim Is Plausible....7

B. Plaintiff's Indirect Infringement Claims Are Plausible....11

C. Plaintiff's Willful Infringement Claim is Plausible....13

II. Google's Section 101 Challenge Is Premature and Fails Under Both Steps of *Alice*....13

A. Claim 1 Is Not Directed to an Abstract Idea (*Alice* Step One)....14

B. Even If Claim 1 Was Directed to an Abstract Idea, Its Ordered Combination Supplies an Inventive Concept (*Alice* Step Two)....19

CONCLUSION....20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.,* 882 F.3d 1121 (Fed. Cir. 2018)...............6, 13

*Affinity Labs of Tex., LLC v. DirecTV, LLC*, 109 F. Supp. 3d 916 (W.D. Tex. 2015)..........................4

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014)...............................................4, 5, 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..........................................................................................3

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada (U.S.)*,
687 F.3d 1266 (Fed. Cir. 2012)...........................................................................................6

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016).....................................................................................5, 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)...........................................................................3

*Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018)...................................................................6

*Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342 (Fed. Cir. 2021)....................................................3

*Campbell v. Wells Fargo Bank*, 781 F.2d 440 (5th Cir. 1986).........................................................3

*Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019).....................................................5

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000)........................................2, 3

*Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373 (Fed. Cir. 2024)....................................14

*Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, 880 F.3d 1356 (Fed. Cir. 2018).............18

*Croga Innovations Ltd. v. Amazon Web Servs., Inc.*, No. 1:24-CV-398-RP,
2025 WL 624556 (W.D. Tex. Feb. 19, 2025)...................................................................13

*Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018).............................5, 17, 18

*Diamond v. Diehr*, 450 U.S. 175 (1981).........................................................................................4

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256 (Fed. Cir. 2018)...............................2, 3

*Dolly Varden Mgmt., Inc. v. City of Universal City*, No. 5:21-CV-00001-DAE,
2021 WL 11670026 (W.D. Tex. Sept. 29, 2021)........................................................................2

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016)........................................5, 14, 16

*Erickson v. Pardus*, 551 U.S. 89 (2007).....................................................................................3

*Funk v. Stryker Corp.*, 631 F.3d 777 (5th Cir. 2011)...................................................................2

*Gottschalk v. Benson,* 409 U.S. 63 (1972)...................................................................................4

*Hodge v. Engleman*, 90 F.4th 840 (5th Cir. 2024)........................................................................2

*Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*,
892 F.3d 719 (5th Cir. 2018)...................................................................................................4

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
681 F.3d 1323 (Fed. Cir. 2017)...............................................................................................12

*In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607 (Fed. Cir. 2016)...............................................5

*Kirsch Rsch. & Dev., LLC v. BlueLinx Corp.*, No. 6-20-CV-00316-ADA,
2021 WL 12300174 (W.D. Tex. July 19, 2021)..........................................................................9

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372 (Fed. Cir. 2017)....................................3, 12

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383 (5th Cir. 2010)........................4

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 556 U.S. 66 (2012)................................4, 5

*McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016)................5, 16, 17

*Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91 (2011)..................................................................5

*Mullen Indus. LLC v. Meta Platforms, Inc.*, No. 1:24-CV-00354-DAE,
2024 WL 5396869 (W.D. Tex. Nov. 14, 2024)...................................................................2, 3, 9

*Mullen Indus. LLC v. Meta Platforms, Inc.*, No. 1:24-CV-00354-DAE,
2025 WL 326402 (W.D. Tex. Jan. 29, 2025)................................................................................2

*Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337 (Fed. Cir. 2018).....................................................3

*Pedersen v. Zoho Corp.*, No. 1:23-CV-71-DII,
2023 WL 3612333 (W.D. Tex. May 23, 2023)............................................................................9

*Qcue, Inc. v. Digonex Techs., Inc.*, Nos. A-12-CA-484-SS, A-12-CA-801-SS,
2013 WL 12121443 (W.D. Tex. Feb. 26, 2013)....................................................................7, 14

*Repairify, Inc. v. Keystone Auto. Indus., Inc.*, 610 F. Supp. 3d 897 (W.D. Tex. 2022)................4, 9

*Sensor Elec. Tech., Inc. v. Lite-On Tech. Corp.*, No. 6:21-CV-322-ADA,
2022 WL 22879658 (W.D. Tex. Aug. 22, 2022)...........................................................11

*Slyce Acquisition Inc. v. Syte-Visual Conception Ltd.*, No. W-19-CV-00257-ADA,
2020 WL 278481 (W.D. Tex. Jan. 10, 2020)...................................................................*passim*

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)..................................................2

*Unification Techs. LLC v. Dell Techs., Inc.*, No. 6:20-CV-00499-ADA,
2021 WL 1343188 (W.D. Tex. Jan. 28, 2021)...........................................................11

**Rules**

Fed. R. Civ. P. 8(a)(2).............................................................................................................3

Fed. R. Civ. P. 12(b)(6)...........................................................................................................1

Fed. R. Evid. 201(b)(2)...........................................................................................................2

**Statutes**

35 U.S.C. § 101.................................................................................................................... 4

## PRELIMINARY STATEMENT

Google's Motion to Dismiss (the "MTD," ECF No. 24) should be denied for the reasons discussed below. As a preliminary matter, Google takes the liberty of narrowing the applications and systems Mr. Lavi accuses of infringement in his First Amended Complaint (the "FAC," ECF No. 21), wrongly claiming that "the only allegedly infringing functionality the FAC identifies is the query refinement option on the 'Images' tab of Google Search ('Images chips')." MTD at 4. This characterization is inaccurate. *See, e.g.*, FAC ¶¶ 31, 35–36, 43, 45 (accusing substantially broader Google Search systems, applications, and functionality of infringement).

Mr. Lavi's pleading is sufficient. The FAC contains detailed factual allegations that, viewed in the light most favorable to Mr. Lavi, give rise to plausible claims of direct, indirect, and willful infringement of the '868 Patent and provide Google with fair notice of the misconduct alleged. Nevertheless, Google asks the Court to ignore Mr. Lavi's substantive factual allegations well supported by Google's own public statements simply because they share language found in the asserted claims.

Google's Section 101 challenge fares no better, and Google cannot meet its burden to establish invalidity by clear and convincing evidence. Google's argument presents factual questions and claim construction issues that cannot be resolved at the pleading stage. Regardless, Google's argument fails because claim 1 of the asserted patent is patent eligible and because both the claim and the FAC identify a specific ordered combination alleged to have been unconventional at the time of the invention.

## LEGAL STANDARDS

A motion under Federal Rule of Civil Procedure 12(b)(6) asks that a complaint be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While Federal Circuit law governs substantive issues of patent law, the law of the Fifth Circuit

governs the procedural issue whether to grant or deny a motion to dismiss. *See Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1259 (Fed. Cir. 2018); *Mullen Indus. LLC v. Meta Platforms, Inc.*, No. 1:24-CV-00354-DAE, 2024 WL 5396869, at *1 (W.D. Tex. Nov. 14, 2024), *report and recommendation adopted*, No. 1:24-CV-354-DAE, 2025 WL 326402 (W.D. Tex. Jan. 29, 2025). In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and rarely granted." *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)).

When deciding a motion to dismiss for failure to state a claim, courts "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). A court may take judicial notice of facts which are "not subject to a reasonable dispute because" they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also Dolly Varden Mgmt., Inc. v. City of Universal City*, No. 5:21-CV-00001-DAE, 2021 WL 11670026, at *3 (W.D. Tex. Sept. 29, 2021) (Ezra, J.).[1]

[1] Plaintiff respectfully requests that the Court take judicial notice of Defendant's statements made on the following webpages, which cannot be reasonably disputed by Defendant as they are published and made publicly available by Defendant: Elizabeth Reid, *Generative AI in Search: Let Google do the searching for you*, News from Google (May 14, 2024), https://blog.google/products-and-platforms/products/search/generative-ai-google-search-may-2024/; Amit Singhal, *Introducing the Knowledge Graph: things, not strings*, News from Google (May 16, 2012), https://blog.google/products-and-platforms/products/search/introducing-knowledge-graph-things-not/; *Google Search Overview and Improvements*, Google Search, https://www.google.com/intl/en_us/search/howsearchworks/how-search-works/ (last visited September 24, 2026); *How Does Google Determine Ranking Results*, Google Search, https://www.google.com/intl/en_us/search/howsearchworks/how-search-works/ranking-results/ (last visited September 24, 2026).

## I. Sufficiency of the Pleadings

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. "The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." *Collins*, 224 F.3d at 498 (quoting *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986)).

"In patent cases, a complaint must place the alleged infringer on notice of what activity is being accused of infringement." *Mullen Indus. LLC*, 2024 WL 5396869, at *2 (citing *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017)). The Federal Circuit has "embraced a flexible pleading standard for direct infringement, inquiring 'whether the factual allegations in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.'" *Id.* (quoting *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the ground upon which it rests." *Disc Disease Sols. Inc.*, 888 F.3d at 1260 (cleaned up) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

A plaintiff need not "prove [his] case at the pleading stage." *Bot M8 LLC*, 4 F.4th at 1352 (quoting *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018)). In resolving a motion to dismiss for failure to state a claim, "[t]he court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of

success." *Repairify, Inc. v. Keystone Auto. Indus., Inc.*, 610 F. Supp. 3d 897, 900 (W.D. Tex. 2022) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)). "[W]hen discoverable information is in the control and possession of a defendant, it is not necessarily the plaintiff's responsibility to provide that information in her complaint." *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 730 (5th Cir. 2018).

## II. Patentability Under 35 U.S.C. § 101

Section 101 of the Patent Act defines patentable subject matter:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. § 101; *see also Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 556 U.S. 66, 70 (2012). While the scope of patentable subject matter is broad, "[l]aws of nature, natural phenomena, and abstract ideas" are not patentable. *Mayo*, 556 U.S. at 70 (quoting *Diamond v. Diehr*, 450 U.S. 175, 185 (1981)).

The Supreme Court has recognized that, at some level, all inventions "embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id.* at 71. "Thus, an invention is not rendered ineligible for patent simply because it involves an abstract concept." *Affinity Labs of Tex., LLC v. DirecTV, LLC*, 109 F. Supp. 3d 916, 921 (W.D. Tex. 2015) (citing *Diamond*, 450 U.S. at 187). "Applications of such concepts 'to a new and useful end' remain eligible for patent protection." *Id.* (quoting *Gottschalk v. Benson,* 409 U.S. 63, 67 (1972)).

In *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, the Supreme Court identified a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." 573 U.S. 208, 217

(2014). At step one, courts must determine "whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* The step-one inquiry "requires that the claims be read as a whole." *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1011 (Fed. Cir. 2018) (citing *Alice*, 573 U.S. at 218 n.3). Courts "'must be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) (quoting *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016)); *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016).

At step two, if the claims at issue are directed to a patent-ineligible concept, courts "search for an 'inventive concept,'" asking "[w]hat else is there in the claims before us?" *Alice*, 573 at 217–18 (quoting *Mayo*, 566 U.S. at 73, 78). Step two requires courts to consider the claim elements "both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* at 217 (quoting *Mayo*, 566 U.S. at 78, 79). "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art," and "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

"[P]atents granted by the United States Patent and Trademark Office are presumptively valid." *Slyce Acquisition Inc. v. Syte-Visual Conception Ltd.*, No. W-19-CV-00257-ADA, 2020 WL 278481, at *4 (W.D. Tex. Jan. 10, 2020) (citing *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 100 (2011)). "This presumption reflects the fact that the Patent and Trademark Office has already examined whether the patent satisfies 'the prerequisites for issuance of a patent,' including § 101." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019) (quoting *Microsoft*,

564 U.S. at 95–96). Accordingly, "the Federal Circuit has held that the second part of *Alice*'s two-step inquiry should be assessed according to the clear and convincing evidence standard." *Id.* (citing *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018)).

Although patent eligibility is ultimately a question of law, "like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination." *Aatrix Software, Inc. v. Green Shades Software, Inc.,* 882 F.3d 1121, 1128 (Fed. Cir. 2018). In particular, "[t]he question of whether a claim element or combination of elements is well-understood, routine, and conventional to a skilled artisan in the relevant field is a question of fact." *Berkheimer*, 881 F.3d at 1368. Therefore, "resolving a patent's § 101 eligibility is rarely appropriate as a Rule 12(b) motion to dismiss," particularly when the analysis depends on factual questions concerning whether the claim limitations were "well-understood, routine, [and] conventional activities previously known to the industry." *Slyce Acquisition Inc.*, 2020 WL 278481, at *3–4 (quoting *Aatrix*, 882 F.3d at 1128).

Similarly, the Federal Circuit has cautioned that "it will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada (U.S.)*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012). "[C]ourts generally understand that claim construction can itself affect a § 101 analysis." *Slyce Acquisition Inc.*, 2020 WL 278481, at *5 (collecting cases).

For these reasons, "a Rule 12(b) motion to dismiss is a procedurally awkward place for a court [to] resolve a patent's § 101 eligibility." *Id.*; *see id.* at *4 (explaining that "the movant needs to overcome both a factual deck stacked against it <u>and</u> a heightened burden of proof"). "It is therefore not difficult to find examples of district courts refusing to resolve § 101 disputes at the

12(b)(6) stage without the benefit of claim construction arguments or an evidentiary record." *Qcue, Inc. v. Digonex Techs., Inc.*, Nos. A-12-CA-484-SS, A-12-CA-801-SS, 2013 WL 12121443, at *2 (W.D. Tex. Feb. 26, 2013) (collecting cases).

## ARGUMENT

### I. Plaintiff Sufficiently Pleads Patent Infringement.

Plaintiff sufficiently pleads direct, indirect, and willful patent infringement, providing detailed factual allegations about Google Search and its search-refinement features that, viewed in the light most favorable to Mr. Lavi, give rise to a plausible claim and put Google on notice of the alleged infringement. Astonishingly, Google contends that Mr. Lavi's FAC is "devoid of any facts," which is plainly false. MTD at 6. Mr. Lavi (1) provides the asserted patent, FAC ¶¶ 20–21; (2) describes the patented invention, FAC ¶¶ 22–30; (3) identifies Google Search by name and describes the accused search functionality, FAC ¶¶ 31–36, 52; and (4) alleges that the accused Google Search functionality meets each and every element of claims 1 and 8 of the asserted patent, FAC ¶¶ 43–46, 54–70. For the reasons below, Google's MTD should be denied.

#### A. Plaintiff's Direct Infringement Claim Is Plausible.

Painting with a broad brush, Google claims that the FAC paraphrases claim elements "without any substantive allegations." MTD at 5–6 (citing FAC ¶¶ 54–70). This characterization is unfounded, and Google only specifically discusses paragraph 57, which it claims is "illustrative." *Id.* at 6. That paragraph contains several well-pleaded factual allegations, including: (1) that Google Search identifies relationships among search terms, indexed data, data entities, and other information maintained at various locations in Google's data network;[2] (2) that Google

[2] *See* Reid, *supra* note 1 (stating that Google has "built a knowledge base of billions of facts about people, places and things"); Singhal, *supra* note 1 (discussing "an intelligent model . . . that understands real-world entities and their relationships to one another" and that "taps into the collective intelligence of the web"); *Google Search Overview and Improvements*, *supra* note 1

Search utilizes these relationships to identify search refinements responsive to a user's search query and generate additional related search terms presented through the user interface;[3] and (3) that Google Search organizes related terms, relationships, and data entities in a data structure that represents the relationships in Google's data network.[4] FAC ¶ 57; *see also* FAC ¶ 35–36 (quoting Danny Sullivan, *Zooming in on an easier way to explore on Search*, News from Google (Dec. 6, 2022), https://blog.google/products-and-platforms/products/search/refine-search-results/). These are substantive, factual allegations well supported by Google's own public statements.

Google faults Mr. Lavi for "parroting" language found in the asserted claims, but the shared language does not render Mr. Lavi's factual allegations mere legal conclusions. MTD at 5. It is a well-known fact that Google Search "solicit[s] and receive[s] search requests, process[es] search queries, identif[ies] related terms, organize[s] relationships among data entities, generate[s] refined

---

(stating in a video that "Google has been continuously mapping the web, hundreds of billions of pages, to create something called an index"); *How Does Google Determine Ranking Results*, *supra* note 1 (describing how Google Search "use[s] aggregated and anonymized interaction data" to "help our machine-learned systems better estimate relevance").

[3] *See* Reid, *supra* note 1 (depicting a user inputting the search query "anniversary celebration dinner places Dallas" and providing icons to refine the search with "Dine-in," "Takeout," Delivery," and "Open now"); Singhal, *supra* note 1 (depicting a user inputting the search query "Taj Mahal," and providing icons to "See results about" the musician Taj Mahal or the former New Jersey casino Taj Mahal); *How Does Google Determine Ranking Results*, *supra* note 1 (referencing Google Search's "sophisticated synonym system" and stating in a video that "Google's ranking algorithms . . . try to understand what you're looking for so they can be helpful even if you don't know exactly the right words to use").

[4] *See* Reid, *supra* note 1 (discussing how Google is "reimagining Google Search—combining the very best of Search today with the Gemini [AI] model's advanced capabilities" and enabling it to "do the searching, simplifying, researching, planning, brainstorming and so much more"); *Google Search Overview and Improvements*, *supra* note 1 (stating in a video that "[e]very time you click Search, our algorithms are analyzing the meaning of the words in your search, matching them to the content on the web, understanding what content is most likely to be helpful and reliable, and then automatically putting it all together in a neatly organized page designed to get you the info you need"); *How Does Google Determine Ranking Results*, *supra* note 1 (explaining how "[t]o give you the most useful information, Search algorithms look at many factors and signals, including the words of your query, relevance and usability of pages, expertise of sources, and your location and settings").

search queries, and return[s] search results." FAC ¶ 54. Likewise, it is common knowledge that "Google's computers/servers are connected to a data network" and that Google Search "facilitate[s] the search process over a data network." FAC ¶¶ 54–55. It is a fact that Google Search "present[s] related search terms through Google's graphical user interface" and "provide[s] users with a system for visual manipulation of search terms." FAC ¶¶ 54, 56; *see also* FAC ¶¶ 35–36. Through its graphical user interface, Google Search "present[s] related search terms as graphical search refinements (also referred to by Google in various contexts as refinement chips, refinements, and refinement labels) generated by Google's search systems, and permit[s] users to interact with those graphical search refinements to modify the scope of the search being performed." FAC ¶ 60; *see also* FAC ¶¶ 35–36. These facts, together with all the various other well-pleaded factual allegations that Google fails to meaningfully challenge, meet the plausibility standard and offer Google fair notice of the alleged infringement.

Next arguing non-infringement, Google provides its own interpretation of the claim terms (e.g., "operators" and "initial search query") and invites the Court "to construe a limitation and dispositively resolve that limitation in its favor." *Kirsch Rsch. & Dev., LLC v. BlueLinx Corp.*, No. 6-20-CV-00316-ADA, 2021 WL 12300174, at *4 (W.D. Tex. July 19, 2021). This is premature. *See, e.g.*, *id.* ("[T]his issue involves claim construction and is better addressed at that stage."); *Mullen Indus. LLC*, 2024 WL 5396869, at *5–6 (agreeing that the defendant's arguments "constitute premature claim construction"); *Pedersen v. Zoho Corp.*, No. 1:23-CV-71-DII, 2023 WL 3612333, at *2 (W.D. Tex. May 23, 2023) (agreeing that defendant's arguments "require the Court to interpret claim language, which is improper at this stage of the litigation"); *Repairify, Inc.*, 610 F. Supp. 3d at 902 ("Disposition of this case based on the construction or prosecution history of these terms is premature.").

Nevertheless, Mr. Lavi disputes Google's claim construction arguments. Regarding "operators," Google cites to the written description of the preferred embodiment of the invention and summarizes that "'operators' allow the user to specify how the terms should be 'applie[d]' to the query: e.g., included in, excluded from, in the same sentence as, etc." MTD at 7–8 (emphasis omitted) (citing '868 Patent at 5:49–56, Figs. 5–19). Google then references a screenshot from paragraph 61 of the FAC and summarily concludes "the accused functionality includes no operators." MTD at 8. But that screenshot depicts both graphical icons that include related terms (e.g., "Pelham blue" or "Ocean blue burst") and exclude related terms (e.g., "Gibson les," depicted with an "x" next to the term) in a new refined search query. Moreover, Mr. Lavi alleges that Google Search "allow[s] visual manipulation of the initial search query by placing graphical icons respective of one or more search terms in a plurality of graphical operators controlled by the GUI." FAC ¶ 61. This is a well-pleaded factual allegation; when searching for a product, for example, an "electric guitar," a Google Search user who clicks on the graphical icons representing related terms "red" and "black" will then see a new refined search query "black OR red electric guitar" as well as graphical icons to further include or exclude related terms.

Regarding "initial search query," Google argues that the FAC "cite[s] evidence contrary to infringement," noting that "screenshots of the accused functionality . . . confirm that the initial query provided by the user—and received by Google—is solely a text query." MTD at 9. Google fails to consider that the claim terms "an initial search query as a visual representation" does not necessarily correspond to the very first search term provided by a user using Google Search but could include the first search upon clicking a graphical icon to populate a search term in the search box. In other words, the first step of the patented method is not necessarily the first step of a user's search experience.

Ultimately, Google's claim construction arguments "are premature assertions that are best addressed in claim construction or non-infringement positions" and are not appropriate to raise in Google's MTD. *Sensor Elec. Tech., Inc. v. Lite-On Tech. Corp.*, No. 6:21-CV-322-ADA, 2022 WL 22879658, at *5 (W.D. Tex. Aug. 22, 2022) (quoting *Unification Techs. LLC v. Dell Techs., Inc.*, No. 6:20-CV-00499-ADA, 2021 WL 1343188, at *3 (W.D. Tex. Jan. 28, 2021)). Accordingly, the Court should deny Google's motion.

**B. Plaintiff's Indirect Infringement Claims Are Plausible.**

Google first argues that Mr. Lavi's indirect infringement claims should be dismissed because, according to Google, "the FAC does not plausibly allege direct infringement by any party." MTD at 10. For the reasons discussed above, Mr. Lavi sufficiently pleads direct infringement, and Google's argument fails.

Next, Google argues that Mr. Lavi does not plead facts that, viewed in the light most favorable to Mr. Lavi, plausibly show that Google intended for its Google Search users to infringe or knew that acts of its users constituted infringement. *See id.* Importantly, though, Google admits that the FAC alleges pre-suit and post-suit knowledge of the asserted patent. *Id.* at 11. Specifically, Mr. Lavi alleges that Google had actual knowledge of the '868 as early as 2016, explaining that "Google cited it as prior art in connection with at least nine of its own patent applications filed with the USPTO." FAC ¶ 38. It is a fact that the asserted patent is cited on the face of several Google patents spanning at least four families of patents directed to search-based content selection that share a recurring group of named inventors and continue through the period of infringement alleged in the FAC. FAC ¶¶ 38–39.

Google cites *Lifetime Indus., Inc.*, where the Federal Circuit overruled the district court's dismissal of the plaintiff's indirect infringement claims on the basis that they failed to plead "any

facts from which intent could be inferred." 869 F.3d at 1379. Like Google, the defendant in that case argued that the plaintiff had alleged only that defendant knew of the patent, not that it had the intent to infringe. *See id.* at 1380. The Federal Circuit stated that the defendant "ask[ed] too much," reiterating that "the plausibility requirement is not akin to a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal that the defendant is liable for the misconduct alleged." *Id.* (cleaned up) (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1341 (Fed. Cir. 2017)). The Federal Circuit then discussed *Bill of Lading*, where the court "determined that the patent owner had adequately pleaded intent where it alleged knowledge of the patent and had plausibly pleaded that the defendants' customers performed the claimed method."

Here, Mr. Lavi alleges, in addition to Google's pre-suit and post-suit knowledge of the asserted patent discussed above, (1) that Google provides the accused Google Search functionality to its users; (2) that the accused functionality practices claims of the '868 patent when facilitating users in building search queries; (3) that Google knew or was willfully blind to the fact that such use constitutes infringement; and (4) that the infringing acts of Google's users are central to Google's business. FAC ¶¶ 31, 42–43. Further, Mr. Lavi alleges (5) that Google operates and controls Google Search, the accused functionality, and the Google Search servers and infrastructure; (6) that Google conditions users' receipt of the benefits and functionality of the accused systems upon performing interactions on Google Search; (7) that Google establishes the manner and timing in which Google Search users interact with specific graphical interface elements, dictate the available interactions, and determine the sequence of such interactions; and (8) that Google Search automatically performs other claimed operations in response to its users' interactions. FAC ¶¶ 32–34. The FAC even references a 2022 blog post written by Google's

"Public Liaison for Search" where he explained and promoted the accused functionality to Google Search users. FAC ¶¶ 35–36.

These well-pleaded factual allegations, taken together with Google's pre-suit knowledge of the '868 Patent and viewed in Mr. Lavi's favor, give rise to a reasonable inference that Google intended for its users to infringe and knew that acts of its users constituted infringement. Google's MTD should therefore be denied.

### C. Plaintiff's Willful Infringement Claim Is Plausible.

For Mr. Lavi's willful infringement claim, Google recycles its arguments regarding indirect infringement, stating only that the claim "fails for the same reasons." MTD at 12. For the reasons discussed above, Mr. Lavi plausibly pleads that Google intended to infringe and for its users to infringe, and Google's motion should be denied.

## II. Google's Section 101 Challenge Is Premature and Fails Under Both Steps of *Alice*.

Google's Section 101 challenge cannot be resolved on the pleadings because the FAC plausibly alleges facts, that taken as true, preclude a finding that claim 1's ordered combination was well understood, routine, and conventional. Dismissal under Section 101 is proper only when "there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software*, 882 F.3d at 1128 (Fed. Cir. 2018). Consistent with that rule, this District has recognized that Section 101 disputes may be inappropriate for resolution at the pleading stage where eligibility depends on factual questions concerning conventionality or would benefit from claim construction. *See, e.g.*, *Slyce Acquisition Inc.*, 2020 WL 278481, at *8 (concluding that "delaying the determination of a patents § 101 eligibility is the wisest course of action"); *Croga Innovations Ltd. v. Amazon Web Servs., Inc.*, No. 1:24-CV-398-RP, 2025 WL 624556, at *3 (W.D. Tex. Feb. 19, 2025) (same).

Google's attorney argument that claim 1 of the asserted patent is directed to an abstract idea that lacks an inventive concept presents factual questions and claim construction issues that cannot be resolved at the pleading stage. *See Slyce Acquisition Inc.*, 2020 WL 278481, at *4. Accordingly, Mr. Lavi respectfully requests that the Court "refus[e] to resolve" the parties' Section 101 dispute at this time, "without the benefit of claim construction arguments or an evidentiary record." *See Qcue, Inc.*, 2013 WL 12121443, at *2.

Regardless, Google's argument fails under both steps of *Alice*, as discussed below.

### A. Claim 1 Is Not Directed to an Abstract Idea (*Alice* Step One).

Claim 1 of the asserted patent is patent eligible, as it is directed at particular computer-implemented method of refining search queries in which relationships among data entities across a network are used to generate related terms that a user visually manipulates through graphical operators to generate a refined query.

For cases involving computer-related technology, courts ask whether "the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish, LLC*, 822 F.3d at 1335–36. The inquiry is whether the claims are directed to "a specific means or method that improves the relevant technology" rather than simply "a result or effect that itself is the abstract idea." *Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373, 1379 (Fed. Cir. 2024).

Claim 1 does not merely recite the desired result of providing related terms or refining a search. It specifies a particular manner of achieving that result: obtaining relationships among related terms and data entities across the network, organizing those relationships in a data structure based on network analysis or expert knowledge, and applying graphical operators to selected related terms to generate the refined query. Google's characterization of claim 1 as simply "providing related terms in an interactive [GUI] that allows the user to modify her search query"

oversimplifies the invention by explaining what the system enables the user to do while ignoring how the claim requires the system to accomplish it. MTD at 1.

Likewise, claim 1 does not merely instruct a generic computer to refine a search. It specifies how the system obtains, structures, manipulates, and ultimately uses specific types of information to generate the refined query. The related-terms generator "scans over said data network from said computer to obtain at least a list of terms related to an initial search query." '868 Patent at 7:10–12. It then "obtains relationships involving said related terms and data entities at different locations in said data network" and "organizes said related terms, said relationships, and said data entities in at least one data structure that represents said relationships in said data network." *Id.* at 7:13–18. The claim further requires that "the data structure is organized, based on at least one of data network analysis and expert knowledge" and that "the data entities in said data network are analyzed in accordance with statistical correlations of word frequencies, location, and dates within the data network." *Id.* at 7:18–23.

These limitations do more than use a data network as a technological setting for generating and displaying related terms. The related-terms generator scans the data network, obtains relationships between related terms and data entities located throughout the network, and organizes those relationships into a data structure representing the relationships in the network. The data structure is then organized based on data network analysis or expert knowledge. Thus, the claimed related terms are not simply generated and displayed using a computer; they are derived and organized based on specific relationships identified within the data network itself.

The claim then uses the resulting network-derived information in a specified graphical query-generation process. The GUI permits the user to "visually plac[e] graphical icons respective of one or more of said related terms to be included in a new refined search query in a plurality of

graphical operators controlled by said GUI," and "each of said plurality of graphical operators applies a different operation on related terms placed therein." *Id.* at 7:29–34. Finally, the query generator generates the refined search query "by applying said plurality of graphical operators on said one or more of related terms, thereby modifying said initial search query according to said visual manipulation." *Id.* at 7:40–43.

Google's characterization of claim 1 as merely "providing related terms in an interactive GUI that allows the user to modify her search query" describes the desired result while ignoring the specific limitations claim 1 requires to achieve that result. MTD at 13. Google describes the general objective of the claim while omitting the claimed relationships across the data network, the organization of those relationships in a data structure, the use of data network analysis or expert knowledge, the plurality of graphical operators applying different operations, and the generation of the refined query through those operators. That is exactly the type of oversimplification *Enfish* cautions against. *See Enfish, LLC*, 822 F.3d at 1337 ("[D]escribing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to section 101 swallow the rule.").

Google also argues that claim 1 does not explain precisely how every relationship is determined, how "expert knowledge" is applied, or what informs that analysis. But *McRO* rejected a similar argument that the claims were insufficiently specific because they did not recite every possible rule. *See McRO, Inc.*, 837 F.3d at 1313. There, the claims were sufficiently constrained because they imposed "meaningful requirements" and limited the rules to "specific characteristics." *Id.*

Claim 1 likewise imposes meaningful requirements on how the refined query is generated. The related terms must be obtained by scanning the data network; relationships involving those

terms and data entities at different locations in the network must be obtained and organized into a data structure representing those relationships; that data structure must be organized based on data network analysis or expert knowledge; the related terms must be visually placed into multiple graphical operators that apply different operations; and the query generator must generate the refined query by applying those operators. Those requirements constrain both the source and organization of the related terms and the way in which those terms are transformed into a refined query. Claim 1 therefore does not claim every method of providing related terms or every method of refining a search query. *See McRO, Inc.*, 837 F.3d at 1313.

Google's analogies to "ordinary human solutions" fail to capture claim 1 as a whole. MTD at 15. Even assuming a person could separately identify related terms, consult an expert, or consider word frequencies, locations, and dates, that does not establish that claim 1 as a whole is directed to that human activity. "It is not enough . . . to merely trace the invention to some real-world analogy"; rather, "[t]he question of abstraction is whether the claim is 'directed to' the abstract idea itself." *Data Engine Techs. LLC*, 906 F.3d at 1011. Google's analogy does not account for the claimed combination of relationships obtained across a data network, their organization in a relationship-representing data structure, the graphical operators applying different operations, and the generation of the refined query through those operators. Google's related characterization of claim 1 as merely "collecting, analyzing, organizing, and displaying information" fails for the same reason. MTD at 15. Claim 1 does not end with the collection or display of information; the claimed information is operated upon through the graphical operators and used by the query generator to produce a new refined search query.

Further, claim 1's GUI limitations are part of how the query is generated, not merely how the results are displayed. The Federal Circuit has recognized that GUI claims are not categorically

abstract merely because they improve a user's interaction with a computer. In *Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, the court found claims directed to an "improved user interface for computing devices" eligible because, although "the generic idea of summarizing information certainly existed," the claims recited a "particular manner of summarizing and presenting information in electronic devices." 880 F.3d 1356, 1362 (Fed. Cir. 2018). Similarly, the court in *Data Engine* distinguished claims that were "simply directed to displaying a graphical user interface or collecting, manipulating, or organizing information" from the claim at issue, "which recites a specific structure . . . within a particular . . . display that performs a specific function." 906 F.3d at 1010–11.

Here, claim 1 recites that type of specific relationship. The GUI allows "graphical icons respective of one or more of said related terms" to be placed "in a plurality of graphical operators controlled by said GUI," and "each of said plurality of graphical operators applies a different operation on related terms placed therein." '868 Patent at 7:29–34. The query generator then generates the refined query "by applying said plurality of graphical operators on said one or more of related terms." *Id.* at 7:40–41. The graphical features therefore do not merely display information; they perform a claimed function in generating the refined search query. *See Data Engine Techs. LLC*, 906 F.3d at 1010–11. The graphical operators apply different operations to the related terms, and the query generator generates the refined query by applying those operators. Lavi does not merely teach improved usability or use of graphics. And the claimed GUI does not merely present the result of the claimed process—it participates in producing that result.

Accordingly, when viewed as a whole, claim 1 is directed to a particular computer-implemented method of refining search queries in which relationships among data entities across

a network are used to generate related terms that a user visually manipulates through graphical operators to generate a refined query and is patent eligible at *Alice* step one.

### B. Even If Claim 1 Were Directed to an Abstract Idea, Its Ordered Combination Supplies an Inventive Concept (*Alice* Step Two).

Even if claim 1 were directed to an abstract idea, Google cannot prevail at Step Two because both the claim and the FAC identify a specific ordered combination alleged to have been unconventional at the time of the invention. *See Alice Corp. Pty. Ltd.*, 573 U.S. at 217. Claim 1 provides an inventive concept in the ordered interaction among the claim's components. The related-terms generator scans the data network and obtains relationships involving related terms and data entities at different locations in that network. Those relationships are organized in a data structure representing the relationships in the data network, based on data network analysis or expert knowledge. The GUI then permits related-term icons to be placed into multiple graphical operators, each applying a different operation. Finally, the query generator generates the refined search query by applying those graphical operators to the related terms. That claimed arrangement, and the requirement that the components interact with each other in a particular manner, is an inventive concept. *See BASCOM Glob. Internet Servs., Inc.*, 827 F.3d at 1350 ("[A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces.").

Google cannot meet its burden to establish invalidity by clear and convincing evidence simply by showing that the computer, GUI, data structure, or search functionality individually were known. The relevant question is whether this claimed arrangement, linking relationships across the data network to the organization and graphical manipulation of related terms and then using those operations to generate the refined query, was itself conventional.

The FAC plausibly alleges that it was not. Mr. Lavi alleges that, "[a]t the time of the invention, conventional search engines generally accepted user-entered search terms and returned ranked search results" but "did not provide an interactive search environment that enabled users to visually construct refined search queries using computer-generated related terms, graphical icons, and graphical operators." FAC ¶ 26. Mr. Lavi further alleges that "[t]he claimed related terms generator, query generator, and graphical user interface integrate to generate, refine, and execute increasingly focused search queries using relationships among data entities maintained within networked data sources." FAC ¶ 27. "The claimed invention also recites a specific sequence of computer operations," and Mr. Lavi alleges that "[t]he ordered combination of these limitations constitutes a particular technological process for improving computerized searching rather than merely automating a longstanding human practice." FAC ¶ 28.

Further, the FAC expressly alleges that "[t]he asserted claims of the '868 Patent disclose inventive concepts that were not well-understood, routine, or conventional at the time of invention, including requiring specific system configurations and operations." FAC ¶ 30. These factual allegations do not merely label generic components "inventive"; they identify what conventional search engines did, what they lacked, and how the claimed components operate together. Accepting the factual allegations of the FAC as true and drawing all reasonable inferences in Mr. Lavi's favor, Google cannot establish by clear and convincing evidence that claim 1's ordered combination was well-understood, routine, and conventional. *See Slyce Acquisition Inc.*, 2020 WL 278481, at *4. Google's MTD should therefore be denied.

**CONCLUSION**

For the foregoing reasons, Google's MTD should be denied.

Dated: October 1, 2026

Respectfully submitted,

By: */s/ Katherine P. Chiarello*

Katherine P. Chiarello
Texas State Bar No. 24006994
katherine@bccaustin.com
**BOTKIN CHIARELLO CALAF PLLC**
1209 Nueces Street
Austin, Texas 78701
T: (512) 615-2341
F: (737) 289-4695

Dariush Keyhani (*admitted pro hac vice*)
District of Columbia Bar No. 1031500
Frances H. Stephenson (*admitted pro hac vice*)
New York Registration No. 5206495
Scott Draffin (*admitted pro hac vice*)
New York Registration No. 6095988
**KEYHANI LLC**
1050 30th Street NW
Washington, DC 20007
Phone: (202) 748-8950
dkeyhani@keyhanillc.com
fstephenson@keyhanillc.com
sdraffin@keyhanillc.com

*Attorneys for Plaintiff Amir Lavi*

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, the undersigned certifies that on October 1, 2026, the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system, which will serve a copy of this document on all counsel of record who have consented to electronic service through the Court's CM/ECF system.

*/s/ Katherine P. Chiarello*
Katherine P. Chiarello